**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Bernard J. BATTAGLIA, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 15, 2002.

Filed June 25, 2002.

Reargument Denied Aug. 26, 2002.

---

Jeffrey A. Conrad, Asst. Dist. Atty., Lancaster, for appellee.

Christopher M. Patterson, Lancaster, for appellee.

Before STEVENS, TODD and CAVANAUGH, JJ.

CAVANAUGH, J.

¶ 1 The Commonwealth appeals the order entered March 9, 2001, granting appellee Bernard J. Battaglia's omnibus pretrial motion to suppress evidence of blood-alcohol content.[1] For the reasons that follow, we affirm the trial court's order.

¶ 2 This appeal stems from an incident that occurred during the early morning hours of April 18, 2000. While monitoring traffic on Harrisburg Pike from a parked location, Officer Kenneth Neidinger of the East Hempfield Township Police Department observed two automobiles pass his position in close proximity to one another.

---

1. In accordance with *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382, 386 (1985) and Pa.R.A.P. 311(d) and 904(e), the Commonwealth has certified that the suppression order "... substantially handicaps and/or effectively terminates prosecution of appellee..." and that the instant appeal is taken in good faith.

The officer later testified that, although the second vehicle "... didn't appear to be doing any more weaving than a normal... car," the first car, driven by appellee, was "weaving from side to side" within its lane of travel. "The officer did not see [appellee's] vehicle touch either the berm line or the center line of his lane." Lower Court Opinion at 2. After appellee's vehicle passed his position, Officer Neidinger pulled out and followed the two cars. For a distance of less than 1/2 of a mile, with another automobile between his police cruiser and appellee, Officer Neidinger continued to observe appellee's vehicle weaving from side to side within its lane of travel: "I... observed the vehicle weaving from side to side... I'm looking through a motor vehicle, trying to see... I can't say that he crossed over the lines, but he was obviously weaving..." At this point, appellee turned right onto another road. The second car continued along Harrisburg Pike. The officer turned right and followed appellee for an additional 1/10 of a mile, whereupon appellee made another right turn. Officer Neidinger continued to follow the vehicle for another 1/2 mile, during which time he estimated appellee was traveling 5 to 10 miles per hour under the thirty-five m.p.h. speed limit.[2] The appellee then turned right, onto the entrance ramp of Route 283. Here, trailing behind significantly, Officer Neidinger observed appellee make a wide turn while negotiating the on-ramp. The officer merged onto Route 283 and trailed the appellee for a distance of about one mile before initiating a traffic stop based on a suspicion of D.U.I..[3]

¶ 3 A hearing on the matter of suppression was held on March 9, 2001. Although it found the testimony of Officer Neidinger to be credible, the trial court nevertheless found that the Commonwealth had failed to meet its burden of proof and granted appellee's suppression motion, which challenged the legality of the stop. The Commonwealth now appeals and presents the following issue for our consideration:

WHETHER THE SUPPRESSION COURT ERRED IN GRANTING DEFENDANT'S MOTION TO SUPPRESS WHERE THE ARRESTING OFFICER HAD ARTICULABLE AND REASONABLE GROUNDS TO SUSPECT THAT A VIOLATION OF THE VEHICLE CODE HAD OCCURRED?

■ ¶ 4 "Our review of a suppression ruling is limited to determining whether the record as a whole supports the suppression court's factual findings and whether the legal conclusions drawn from such findings are free of error." *Commonwealth v. Dowds*, 563 Pa. 377, 761 A.2d 1125, 1128 (2000). "[W]hen reviewing the Commonwealth's appeal from the decision of a suppression court, 'we must consider only the evidence of the... appellee's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted.'" *Commonwealth v. Prosek*, 700 A.2d 1305, 1307 (Pa.Super.1997)(*citing Commonwealth v. Baer*, 439 Pa.Super. 437, 654 A.2d 1058, 1058 (1994)).

**2.** As Officer Neidinger later acknowledged, the relevant police training manuals state that a suspect's speed must be greater than 10 m.p.h. under the posted speed limit in order to be considered a sign of driver intoxication.

**3.** The officer testified that, "There's a slight left-hand bend in the road. And the vehicle at

that point crossed over into the left lane and then—not the entire vehicle. It didn't appear that he was making a lane change—crossed into the left lane and back into the right lane..." It was after the above observation that Officer Neidinger decided to stop appellee's automobile.

¶ 5 The trial court addressed the various indicia of appellee's erratic driving and found that each was insufficient to provide Officer Neidinger with probable cause to stop appellee's vehicle.[4] Upon review, we find both that the record supports the trial court's determination, and that the determination is free from legal error. Therefore, we affirm.

¶ 6 The legislature has vested police officers with authority to stop a vehicle when they have "articulable and reasonable grounds to suspect a violation" of the Vehicle Code. 75 Pa.C.S.A. § 6308(b).

> If the alleged basis of a vehicular stop is to permit a determination whether there has been compliance with the Motor Vehicle Code of this Commonwealth, it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.

*Commonwealth v. Whitmyer*, 542 Pa. 545, 668 A.2d 1113, 1116 (1995) (citations omitted)(emphasis in original). While at first glance these two phrases—"articulable and reasonable grounds" and "probable cause"—might seem to express different standards, they, in fact, do not. In *Whit-myer*, the supreme court addressed this mistaken notion:

> The crux of [appellant Commonwealth's] argument centers on the semantic difference between the standard articulated in [*Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975) ]—probable cause to believe that there has been a violation of the Vehicle Code, and the language of the statute—articulable and reasonable grounds to suspect a violation of the Vehicle Code. However, when we balance the underlying interests of the individual and the government, the two standards amount to nothing more than a distinction without a difference.

*Id.* at 1116.

¶ 7 The Commonwealth's argument is built upon discredited caselaw which, based upon an erroneous interpretation of "articulable and reasonable grounds," was thought to permit traffic stops on a showing of less than probable cause.[5]

¶ 8 Quite recently, our Supreme Court reversed this Court's decision in *Commonwealth v. Baumgardner*, 767 A.2d 1065 (Pa.Super.2001). *See Commonwealth v. Baumgardner*, 796 A.2d 965 (Pa.2002). In *Baumgardner*, we held that where an automobile exhibits "excessive," "pronounced," or "exaggerated" intra-lane weaving over a period of sufficient dura-

**4.** We note that the trial court used the "probable cause" and "articulable suspicion" standards for traffic stops interchangeably. This is incorrect, as only "probable cause" is the proper standard. The court's determination, however, was ultimately correct.

**5.** In *its* brief on appeal, the Commonwealth presents the following passage from *Commonwealth v. Korenkiewicz*, 743 A.2d 958 (Pa.Super.1999)(*en banc* ), in support of such a less-stringent standard:

> A police officer may stop a vehicle when he has reasonable, articulable facts to suspect a violation of the Vehicle Code. 75 Pa. C.S.A. § 6308(b); *Commonwealth v. Whit-*

*myer* . . . 668 A.2d 1113 ( [Pa.] 1995)(confirming correct standard for vehicular stops as "articulable and reasonable grounds to suspect" violation of the Vehicle Code); *Commonwealth v. McElroy* . . .630 A.2d 35 ( [Pa.Super.] 1993)(*en banc* ), *appeal denied* . . . 673 A.2d 335 ( [Pa.] 1996)(adopting "articulable and reasonable grounds to suspect" as preferred standard for vehicular stops). "The reasonable suspicion necessary *to justify a vehicular stop is less* stringent than probable cause, but the officer must have more than a hunch as the basis of a stop." *Commonwealth v. Wright* . . .672 A.2d 826, 830 ( [Pa.Super.] 1996).

tion (in this case, over the course of two miles), such a display serves to justify a police officer's suspicion of D.U.I., and therefore a traffic stop.

¶ 9 The Supreme Court reversed *Baumgardner* on the basis of its decision in *Commonwealth v. Gleason*, 567 Pa. 111, 785 A.2d 983 (2001).[6] In *Gleason*, a police officer executed a traffic stop when, while following an automobile for 1/4 of a mile, he observed the auto "... cross the solid fog line on two or three occasions..." *Id.* at 985. This incident transpired late at night, with no other vehicles on the road. The appellant failed field sobriety tests, and proved to have an expired driver's license. A search of the vehicle revealed a small amount of cocaine, as well as an uncapped syringe. The appellant was charged with various offenses, including failure to drive within a single lane.

¶ 10 Appellant later filed a motion to suppress all physical evidence seized, claiming that the stop of his vehicle had been illegal. The trial court granted his motion, stating:

> Given the early morning hour, the fact that there was no other traffic on the roadway and the rather momentary nature of defendant's vehicle crossing the fog line on two perhaps three occasions, the officer erred in believing he had justification to stop defendant's vehicle. The observations of [the arresting officer] do not warrant a stop on any cognizable legal theory.

*Id.* at 985–86 (citation omitted).

■ ¶ 11 The Commonwealth appealed the trial court's decision to suppress, and

this Court reversed in an unpublished memorandum decision. In so doing, we stated that "... the lack of any evidence at the suppression hearing that Appellant's driving created a safety hazard leads us to agree... that there was insufficient evidence to support a Section 3309(1) violation."[7] *Id.* at 989. Nevertheless, we concluded:

> We cannot agree... that [Appellant's] drifting onto the berm of the highway two or three times within such a short distance failed to justify the stop in the within case. Indeed, [Appellant's] repeated inability to remain on the highway with an intersection approaching reasonably prompted [the officer] to "check on the operator for his erratic driving[;] his condition, whether he had been drinking or possibly falling asleep."

*Id.* at 986 (citation omitted). In other words, we found the stop justified, not based upon probable cause that a violation of the Code had occurred, but rather on the basis of erratic driving.[8]

¶ 12 The Supreme Court reversed and reinstated appellant's motion to suppress. The court found that in permitting a traffic stop, despite recognizing that there was no evidence presented to support a violation of the Vehicle Code, that this Court had impermissibly "... lowered the standard for a proper vehicle stop." *Id.* at 989. The court reiterated that the correct standard requires a showing of probable cause to believe that a violation of the Code has occurred.

---

**6.** We also note that the Supreme Court recently reversed a memorandum decision of this court, *Commonwealth v. Roudybush*, 766 A.2d 891 (Pa.Super.2000). This case, not dissimilar to *Baumgardner*, was also reversed on the basis of the Court's decision in *Gleason*. See *Commonwealth v. Roudybush*, 567 Pa. 667, 790 A.2d 313 (2002).

**7.** 75 Pa.C.S.A. § 3309(1), which was the basis for the traffic stop performed in *Gleason*, provides that an automobile must be driven, "as nearly as practicable," within a single lane.

**8.** Erratic driving is not *per se* a violation of the Vehicle Code.

¶ 13 From these cases, we might extract the conclusion that there is no basis for "profiling" a suspected drunk driver merely on the basis of observing undisciplined operation of a vehicle which does not form the basis for a conclusion that there has been a violation of the Vehicle Code.

■ ¶ 14 Upon review of the record in the case *sub judice,* we find that Officer Neidinger did not have probable cause to justify the stop of Appellee's automobile. The Commonwealth did not argue that Officer Neidinger had such probable cause. Instead, as indicated above, the Commonwealth argued that the officer interpreted Appellee's driving as erratic, based upon several factors, and as such was permitted to execute a traffic stop.[9] We find, based upon the Vehicle Code and above-mentioned precedent established by our Supreme Court, that perceived "erratic driving" in and of itself is not a violation of the Code and, without more, does not provide probable cause to execute a traffic stop.

¶ 15 Therefore, we conclude that the decision to suppress, as reached by the lower court, was proper.

¶ 16 Order affirmed.

¶ 17 Judge Stevens files a Dissenting Opinion.

STEVENS, J., Dissenting.

¶ 1 I conclude that Officer Kenneth Neidinger had probable cause to stop Appellee's vehicle, and, therefore, I conclude that the trial court erred in granting Appellee's motion to suppress. As such, I respectfully dissent.

¶ 2 While one does not loose all expectation of privacy while traveling in an automobile, our courts recognize that the Commonwealth has an interest in maintaining the safety of those who use its roads. Therefore, the police should be permitted a reasonable degree of latitude when stopping automobiles to meet this obligation. *Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983 (2001). Relevant case law establishes that a police officer may stop a vehicle based on reckless driving, even if only out of the concern for the driver's own safety. *Commonwealth v. Masters,* 737 A.2d 1229 (Pa.Super.1999).

¶ 3 The facts in this case reveal that Appellee was driving recklessly, and, therefore, Officer Neidinger was permitted to stop Appellee's vehicle. Specifically, Appellee drove recklessly for over two and one half miles, involving travel on more than one road. Officer Neidinger testified that when he observed Appellee driving on the Harrisburg Pike, Appellee's car was weaving inappropriately from side to side, in contrast to the normal weave of the car behind Appellee's vehicle. N.T. 3/9/01 at 8–9. Appellee traveled onto Route 283, making an inappropriate wide turn onto the shoulder of the ramp. While on Route 282, which is a four-lane divided highway, Officer Neidinger observed Appellee's vehicle for one mile as it wove from the right hand driving lane partially into the left hand passing lane, and back again, without a credible explanation. In this instance, the totality of the circumstances indicated that, at the very least, the driver's safety

---

9. The lower court, in its opinion *sur* appeal, grouped the evidence presented by the Commonwealth into seven factors: "(1) that it was 2:14 a.m. when the officer observed defendant; (2) that defendant was weaving within his lane of traffic for approximately four-tenths of a mile; (3) that defendant traveled between 5 and 10 miles per hour under the posted speed limit; (4) that defendant made a wide left turn; (5) that defendant appeared to cross over the white line during the wide left turn; (6) that defendant's vehicle crossed the broken white line from the right lane into the left lane on Route 283; (7) that all of this occurred within two and one half miles."

was at issue giving the officer probable cause to stop the vehicle.

¶ 4 Based on the aforementioned, I conclude that Officer Neidinger had probable cause to stop Appellee's vehicle, and, therefore, the trial court erred in granting Appellee's motion to suppress. As such, I would reverse the trial court's suppression order.