**Commonwealth v. Kane**

C.P. of Carbon County, no. 313 CR 04.

*William E. McDonald, assistant district attorney,* for the Commonwealth.
*Brian J. Collins,* for defendant.

NANOVIC, *P.J.,* March 17, 2005—James Kane (defendant) has filed a motion to suppress evidence and, in conjunction therewith, a petition for a writ of habeas corpus and a motion to quash the charges filed against him relative to a traffic stop which occurred during the early morning hours of February 22, 2004. In consequence of this stop, defendant has been charged with violating five provisions of the Pennsylvania Motor Vehicle Code:

Count 1: Driving under the influence of alcohol;[1]

Count 2: Driving on roadways laned for traffic;[2]

Count 3: Driving on right side of roadway;[3]

Count 4: Careless driving;[4] and

Count 5: Registration and certificate of title required.[5]

Defendant argues that the stop was illegal, that all evidence obtained therefrom must be suppressed, and that, absent this evidence, there is insufficient evidence to sustain the charges filed.

---

1. 75 Pa.C.S. §3802(a)(1).
2. 75 Pa.C.S. §3309(1).
3. 75 Pa.C.S. §3301(a).
4. 75 Pa.C.S. §3714.
5. 75 Pa.C.S. §1301(a).

## FACTUAL BACKGROUND

On Sunday, February 22, 2004, at approximately 2:50 a.m., Officer Craig Strohl of the Nesquehoning Borough Police Department was on routine patrol within the borough. At this time, in the vicinity of the intersection of State Routes 93 and 209, Officer Strohl observed a vehicle being driven by the defendant swerve and cross the double yellow line. Defendant was driving northbound on Route 209 headed in the direction of the Borough of Jim Thorpe. State Route 209 is a two-lane highway, which connects the boroughs of Nesquehoning and Jim Thorpe.

From this first observation, Officer Strohl began following defendant's vehicle. During a distance of approximately two miles, Officer Strohl observed defendant's vehicle cross the double yellow line three times and the white fog line twice.

Officer Strohl initially observed defendant's vehicle cross the center double yellow line by one-fourth of the car's width for about three seconds. Approximately 20 seconds later, the Officer saw the car cross the yellow line, for a second time, by one-half of the car's width for three seconds. Ten seconds later, defendant's vehicle crossed the double yellow line, a third time, by one-fourth of the car's width for three seconds. After another 10 seconds, Officer Strohl observed the car cross the white fog line, by one-fourth of the car's width for two seconds. Immediately afterwards, the Officer once again saw defendant's vehicle cross the fog line, for a second time, by one-fourth of the car's width for five seconds. Believing the driver might be impaired, it was at this point that Officer Strohl activated his overhead lights and si-

ren and stopped defendant's vehicle. Officer Strohl stated that the time intervals between the line crossings were his approximations.

No evidence was presented that defendant exceeded the 45 mile per hour speed limit while being followed by Officer Strohl. The officer further testified that there were no other vehicles on the road while he followed the defendant but that he was concerned that there would be an accident. All of Officer Strohl's observations which prompted his decision to stop defendant's vehicle, as well as the initiation of the stop—the activation of Officer Strohl's overhead lights and siren—occurred within the Borough of Nesquehoning. The actual location at which defendant's vehicle stopped, however, was within the borough limits for Jim Thorpe.[6]

## DISCUSSION

Defendant argues that the police did not have reason to suspect a violation of the Vehicle Code at the time defendant's vehicle was stopped and, therefore, any evidence obtained as a result of the stop must be suppressed. 75 Pa.C.S. §6308(b). Defendant relies principally on *Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983 (2001), and its underlying premise that erratic driving is not a per se violation of the Vehicle Code. See *Common-*

---

6. In his motion to suppress, defendant originally challenged the stop as being beyond the officer's primary jurisdiction and therefore invalid. This position was not pursued at the time of the suppression hearing and was clearly without merit. 42 Pa.C.S. §8953(a)(2); see also, *Kruth v. PennDOT,* 856 A.2d 901, 906-907 (Pa. Commw. 2004) (officer's fresh pursuit and extraterritorial DUI arrest were proper where officer's observations of erratic driving occurred within officer's primary jurisdiction).

*wealth v. Battaglia,* 802 A.2d 652, 657 (Pa. Super. 2002), *appeal denied,* 576 Pa. 718, 841 A.2d 528 (2003).

In *Gleason,* the defendant, while driving on a four-lane divided highway over a distance of approximately one quarter mile during the early morning hours, crossed the fog line twice, each time by six to eight inches for a period of one to two seconds. In the context of an alleged violation of section 3309(1) of the Vehicle Code (driving within single lane), where no other vehicles were on the road and absent any evidence that defendant's driving created a safety hazard, the Supreme Court held that the stop was not supported by probable cause to believe a violation of the Vehicle Code had occurred, or was occurring.

Since *Gleason,* the Superior Court has openly acknowledged its struggle to apply the *Gleason* holding to the myriad fact patterns before it. *Commonwealth v. Garcia,* 859 A.2d 820, 822 (Pa. Super. 2004). This point was illustrated graphically in *Garcia* by the court's recitation of the facts in *Commonwealth v. Lindblom,* 854 A.2d 604 (Pa. Super. 2004), *appeal denied,* 868 A.2d 1198 (Pa. 2005), and those in *Commonwealth v. Chernosky,* 2004 Pa. Super 272 (reargument en banc granted September 21, 2004), in which the court arguably reached inconsistent and contradictory conclusions. *Id.* at 822-23. While recognizing the differing results reported by the Superior Court, we believe the facts of this case are sufficiently distinguishable from *Gleason* to justify a different result.

As already stated, the defendant in this case was driving on a two-lane highway—one lane for each direction of travel—as opposed to a four-lane divided highway.

And while defendant, like *Gleason,* was followed over a distance of approximately one-quarter mile during the early morning hours, unlike *Gleason,* the defendant here crossed the fog line twice, not by several inches, but by several feet. Of even greater significance, whereas in *Gleason* the defendant crossed only the fog line, the outermost portion of his lane furthest from oncoming traffic, here the defendant crossed the double yellow line three times, each time entering the opposing lane of traffic by one-fourth to one-half of his car's width.

The facts of this case, we believe, are more analogous to those of *Lindblom,* 854 A.2d 604. There, a citizen witness saw defendant's vehicle weave back and forth between the center yellow and outer white lines, cross the double yellow line four to five times by one and a half feet, at times straddling the double yellow line, and also cross the fog line four to five times. *Id.* at 606. In reversing the trial court's granting of defendant's suppression motion, these facts were expressly found sufficient to establish probable cause for a traffic stop. As to the need for evidence that defendant's driving actually endangered public safety, the court stated: "[W]hile opposing traffic may not have been present during the entire time [the witness] observed [defendant] driving, we note that a motorist may be stopped for reckless driving even if the only concern is for the motorist's own safety." *Id.* at 608 (citing *Commonwealth v. Masters,* 737 A.2d 1229, 1232 (Pa. Super. 1999), *appeal denied,* 562 Pa. 667, 753 A.2d 816 (2000)); see also, *Commonwealth v. Cook,* 865 A.2d 869 (Pa. Super. 2004) (finding that a report of erratic driving followed by a trooper's independent observations of the defendant's vehicle crossing the right white fog line three

times, to the extent of half the vehicle width, over a distance of one mile, each time rapidly jerking the vehicle back into its lane of traffic, justified the traffic stop); *Commonwealth v. Klopp,* 863 A.2d 1211 (Pa. Super. 2004) (holding officer's observations of a vehicle crossing the center double yellow line of a two-lane highway four times by less than one half of her car—once causing a vehicle in the oncoming lane of traffic to shift right within his lane, but without the need for drastic evasive action—and crossing the fog line four times over a distance of at least 1.6 miles, established probable cause for a traffic stop).

In summarizing whether a police officer has the authority to stop a motor vehicle suspected of being driven or being in violation of the Vehicle Code, the *Lindblom* court stated:

"In order for a traffic stop to be justified, a police officer must have probable cause to believe that a violation of the Vehicle Code or regulations has taken place. *Commonwealth v. Battaglia,* 802 A.2d 652, 656 (Pa. Super. 2002). The officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the Vehicle Code. *Id.* Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference. *Commonwealth v. Stroud,* 699 A.2d 1305, 1308 (Pa. Super. 1997). In considering when a traffic stop is justified, the Pennsylvania Supreme Court has stated that:

"The Commonwealth has an interest in enacting and enforcing rules and regulations for the safety of those

who travel its highways and roads. The police should thus be permitted a sufficient degree of latitude to stop automobiles in order to meet this objective. On the other side, the privacy interest of the individual has been cogently articulated by the United States Supreme Court:

"An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use is subject to government regulation. Automobile travel is a basic pervasive, and often necessary mode of transportation to and from one's home, workplace and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. *Delaware v. Prouse,* [440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660] (1979). (footnote omitted)

"When previously faced with these two competing interests, we held 'that a stop of a single vehicle is unreasonable where there is no outward sign the vehicle or the operator are in violation of the Vehicle Code[.] [B]efore the government may single out one automobile to stop, there must be specific facts justifying this intrusion.' *Commonwealth v. Whitmyer,* 542 Pa. 545, 551-52, 668 A.2d 1113, 1116-17 (1995). (some citations omitted)" *Lindblom,* 854 A.2d at 607-608 (quoting *Commonwealth v. Mickley,* 846 A.2d 686, 689-90 (Pa. Super. 2004), *appeal denied,* 860 A.2d 489 (Pa. 2004)).

In *Garcia,* the court derived from the *Gleason* decision what it identified as the "momentary and minor standard" for determining when erratic driving will justify a

traffic stop: "[W]here a vehicle is driven outside the lane of traffic for just a momentary period of time and in a minor manner, a traffic stop is unwarranted." 859 A.2d at 823. This description, while undoubtedly correct, is incomplete and fails to account fully for the context of the suspected infraction. In *Gleason,* crossing the fog line by several inches on a four-lane divided highway posed no danger and can easily be explained as being part of normal driving. In contrast, when a chance encounter places police behind an unknown driver on a two-lane rural highway during the early morning hours— at a time when little, if any, other traffic can be expected to be present—and the police observe the driver cross both the center line and the fog line not once or twice but multiple times, without a reasonable neutral explanation—*e.g.,* a narrow road, a sequence of sharp curves, being blinded by the lights of oncoming traffic, or avoiding puddles, potholes or some other obstacle on the road—the officer reasonably, objectively and in good faith has a legitimate basis—one reaching the level of probable cause—to believe a violation of the Vehicle Code is occurring or has occurred. Such is the case here.

Given the tragic and often fatal consequences that might at any time otherwise result, to say that a police officer confronted with these circumstances must wait and continue to observe is not the answer and, we believe, is not the law expressed in *Gleason.*[7] *Gleason* re-

---

7. Notwithstanding this belief, given the difficulty in reconciling the Superior Court's various applications of the *Gleason* holding, and being cognizant of the need to properly balance the competing interests of government in enacting and enforcing rules and regulations for the safety of those who travel its highways and roads against the privacy interests of those traveling on such highways and roads to be

quires only that at the time of the stop probable cause exists to believe that the driver or his vehicle is in violation of some provision of the Vehicle Code; *Gleason* does not require that the evidence, at the time of the stop, will lead to a conviction.

In the present case, in addition to being charged with driving under the influence, defendant has been charged not only with failing to drive within his lane of traffic and with failing to drive on the right half of the roadway, but also with careless driving. At a minimum, with respect to this latter offense, the degree of erratic driving observed by Officer Strohl reasonably raised an inference that this provision of the Vehicle Code was being violated, sufficient to justify a stop and an investigation by the officer to determine the cause of the erratic driving.[8] *Commonwealth v. Barkley*, 234 Pa. Super. 503, 341

---

free from unfounded and arbitrary governmental intrusions, the need for either our Supreme Court to clarify the principles enunciated in *Gleason* or our legislature to re-examine the provisions of the Motor Vehicle Code, particularly sections 3301(a), 3309(1) and 3714, is apparent.

8. The offense of careless driving has two elements: "an *actus reus*—driving a vehicle; and a *mens rea*—careless disregard. There is no causation or particular result required by the statute." *Commonwealth v. Wood*, 327 Pa. Super. 351, 355, 475 A.2d 834, 836 (1984). (emphasis in original) As the Superior Court has explained:

"The only proof necessary to establish reckless driving is that the [driver] drove a vehicle in careless disregard for the safety and property of others. . . . The *mens rea* of reckless driving, 'careless disregard,' implies 'less than willful or wanton conduct . . . [but] . . . more than ordinary negligence or the mere absence of care under the circumstances . . . .' " *Matter of Huff*, 399 Pa. Super. 574, 582, 582 A.2d 1093, 1097 (1990), *aff'd*, 529 Pa. 442, 604 A.2d 1026 (1992). Reckless driving, as discussed in *Huff*, was essentially the same offense as careless driving under the current section 3714 of the Vehicle Code.

A.2d 192 (1975) (finding that officer's observations of defendant weaving four or five times over approximately two miles provided officer with probable cause to believe the driver was in violation of this section of the Vehicle Code); cf. *Commonwealth v. Whitmyer,* 542 Pa. 545, 668 A.2d 1113 (1995) (finding with respect to some offenses, section 3361 of the Vehicle Code (driving at an unsafe speed) being one, that because further investigation following a stop could not lead to the discovery of further evidence in support of this violation, the evidence preceding the stop must be sufficient, in and of itself, to support the violation).

Here, prior to Officer Strohl's stop of defendant's motor vehicle, the officer's observations of defendant's driving described a degree of erratic driving, without any corresponding benign explanation, far exceeding that described in *Gleason.* The extent to which defendant's vehicle crossed over both the center and fog lines, and the duration and number of these crossings, exceed the "momentary and minor standard" of probable cause described in *Garcia.* Officer Strohl's observations support, even though they do not require, a reasonable inference that the Vehicle Code was being violated and that defendant's continued operation of his vehicle posed a danger to himself, as well as to others.

## CONCLUSION

In accordance with the foregoing, we conclude that Officer Strohl has credibly and reasonably articulated sufficient grounds to suspect a violation of the Vehicle Code prior to his stop of defendant's vehicle and that Officer Strohl's actions were proper. Indeed, had Officer

Strohl not stopped defendant's vehicle, and had an accident occurred, Officer Strohl's failure to stop defendant's vehicle might reasonably be questioned. Accordingly, defendant's motion to suppress will be denied.[9]

---

9. The basis of defendant's petition for a writ of habeas corpus and motion to quash the information is his belief that because his stop was illegal, all observations made by the police thereafter and all information or other evidence acquired from the stop must be suppressed, thereby depriving the Commonwealth of sufficient evidence to sustain its charges. Although we have already determined defendant's underlying premise to be in error, even if we had found otherwise, "the remedy for illegally obtained evidence is suppression of the evidence and its exclusion at trial, not dismissal of the case." *Commonwealth v. Keller,* 823 A.2d 1004, 1011-12 (Pa. Super. 2003), *appeal denied,* 574 Pa. 764, 832 A.2d 435 (2003). As a matter of technical accuracy, we further note, that while "a petition for writ of habeas corpus is the proper means for testing a pretrial finding that the Commonwealth has sufficient evidence to establish a prima facie case," a motion to quash "is neither a guilt determining procedure nor a pretrial means for determining the sufficiency of the Commonwealth's evidence." *Commonwealth v. Keller,* 823 A.2d at 1010 (as to the first quotation) (emphasis in original); *Commonwealth v. Finley,* 860 A.2d 132, 135 (Pa. Super. 2004) (as to the second quotation). While "[n]either the adequacy nor competency of the Commonwealth's evidence can be tested by a motion to quash the information," a motion to quash is "an appropriate means for raising defects apparent on the face of the information or other defects which would prevent prosecution." *Commonwealth v. Finley,* 860 A.2d at 135. Accordingly, both defendant's petition for a writ of habeas corpus and motion to quash the information will likewise be denied.