J-S09009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NICHOLAS ALEXANDER BOONE, | |
| Appellant | No. 3494 EDA 2015 |

Appeal from the Judgment of Sentence October 20, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0003701-2015

BEFORE:  SHOGAN, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                  **FILED FEBRUARY 28, 2017**

Nicholas Alexander Boone ("Appellant") appeals from the judgment of sentence imposed on October 20, 2015, in the Court of Common Pleas of Delaware County.  We affirm.

This case arises out of a traffic stop on January 17, 2015, at 3:35 a.m. by Pennsylvania State Trooper Matthew J. Klein, which led to Appellant's arrest on two counts of driving under the influence ("DUI").  Appellant filed a pre-trial motion to suppress evidence, wherein he claimed that the stop of his vehicle was "without probable cause."  Omnibus Pretrial Motion, 8/21/15, at ¶ 8.  Following a combined exclusionary hearing and nonjury trial on September 11, 2015, the Honorable Kevin F. Kelly denied Appellant's motion

---

[*]  Retired Senior Judge assigned to the Superior Court.

to suppress, *inter alia*, the results of a breathalyzer test[1] administered by Trooper Klein. The trial judge then found Appellant guilty of DUI—general impairment, and DUI—high rate of alcohol, in violation of 75 Pa.C.S. § 3802(a)(1) and (b), respectively. N.T., 9/16/15, at 4–5. On October 20, 2015, the trial court sentenced Appellant to incarceration for forty-eight hours to six months. N.T., 10/20/15, at 5, 7. This appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our consideration:

Whether *Birchfield*[2] renders the results of the breathalyzer inadmissible on these facts and calls for remand to record the validity of [Appellant's] purported consent. The pre-printed segment of the DL-26 form then in use, Commonwealth exhibit C-2, gave the trooper the choice between blood, breath or urine and was styled "Chemical Testing Warnings." The narrow question presented is whether [Appellant] consented to the satisfaction of *Birchfield*, 75 Pa.C.S. 1547 and Pennsylvania case law.

Whether this traffic stop was on a hunch or supported by reasonable suspicion based on facts articulated by the state trooper sufficient to support a seizure? [Appellant] committed no traffic violation, stayed in his lane and testified to a reasonable and uncontradicted explanation about his delay at the green light.

Appellant's Brief at 7 (full italics omitted).

Appellant first challenges the voluntariness of his consent to a breathalyzer test. Appellant's Brief at 11. In support of his position,

_____

[1] Appellant's blood alcohol content was .125%.

[2] ***Birchfield v. North Dakota***, ___ U.S. ___, 136 S.Ct. 2160 (2016).

- 2 -

Appellant relies on **Birchfield v. North Dakota**, ___ U.S. ___, 136 S.Ct. 2160 (2016). According to Appellant, **Birchfield** renders a law that compels consent to chemical testing unconstitutional. Appellant's Brief at 12. Interpreting **Birchfield** broadly as including blood and breath tests, Appellant argues that he "may have been coerced into a chemical test the type of which was plainly up to the trooper." *Id.* at 13. Consequently, he claims entitlement to a hearing, as in **Birchfield**, at which the trial court would "reevaluate" his consent to testing in light of the "obsolete language of [the Implied Consent form] DL-26." *Id.* at 12, 13.

> In response, the Commonwealth argues that **Birchfield**:
>
> provides no basis for relief for [A]ppellant who consented to a breath test which revealed his blood alcohol content (BAC) to be .125%. . . . Moreover, [A]ppellant's claim, challenging the voluntariness of his consent to the breath test based upon Birchfield, was not raised in the trial court, is being raised for the first time on appeal and is, therefore, waived.

Commonwealth's Brief at 9.

Our review of the record confirms that Appellant failed to raise the voluntariness of his consent to the breath test in the trial court. Thus, even though we may apply case law decided during the pendency of a direct

appeal,[3] we agree that the issue of the voluntariness of Appellant's consent is waived.[4]

Next, Appellant challenges the traffic stop by Trooper Klein as illegal. Appellant argues that evidence obtained as a result of the stop should have been suppressed.[5] Appellant's Brief at 15. In support of his position that

---

[3] *See Commonwealth v. Brown*, 431 A.2d at 906–907 (Pa. Super. 1981), *overruled on other grounds*, *Commonwealth v. Geschwendt*, 454 A.2d 991, 999 (Pa. 1982) ("[A] party whose case is pending on direct appeal is entitled to the benefit of changes in law which occurs before the judgment becomes final.").

[4] Even if Appellant's first issue had been preserved, it would not warrant relief. Because "[b]lood tests are significantly more intrusive, and their reasonableness must be judged in light of the availability of the less invasive alternative of a breath test," the *Birchfield* Court opined that "the search incident to arrest doctrine does not justify the warrantless taking of a blood sample." *Birchfield*, 136 S.Ct. at 2185. In contrast, "[h]aving assessed the effect of BAC tests on privacy interests and the need for such tests," the *Birchfield* Court concluded that "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving. The impact of breath tests on privacy is slight, and the need for BAC testing is great." *Birchfield*, 136 S.Ct. at 2184.

Here, Trooper Klein read the Implied Consent Form DL-26 to Appellant, and Appellant consented to the breath test. N.T., 9/11/15, at 40 and Exhibit C-2. Appellant "concedes the trooper gave no discernable indication there would be anything but a breath test, and it was administered." Appellant's Brief at 13. Appellant's claim that he "may have been coerced into a chemical test" is hollow. *Id.* Nothing in the record indicates that he consented to anything but a breath test or that his consent to the breath test was anything but voluntary.

[5] Specifically, Appellant sought suppression of evidence that an odor of alcohol emanated from his person, his eyes were glassy, his speech was slurred, he swayed while standing outside of the vehicle, and his attention wavered. N.T., 9/11/15, at 36, 38.

Trooper Klein's traffic stop "smacks of overzealousness," Appellant cites

***Commonwealth v. Battaglia***, 802 A.2d 652 (Pa. Super. 2002), and

***Commonwealth v. Chase***, 960 A.2d 108 (Pa. 2008). Appellant's Brief at

14, 15, 19. According to Appellant, ***Battaglia*** requires a showing of

probable cause to stop a driver for DUI, and ***Chase*** requires a suppression

court to consider the motivation of the officer. ***Id.*** at 14, 18.

> Our review is guided by the following standards:
>
> "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 615 Pa. 395, 42 A.3d 1040, 1047–1048 (Pa. Super. 2012) (*en banc*); see also Pa.R.Crim.P. 581(H). With respect to an appeal from the denial of a motion to suppress, our Supreme Court has declared:
>
> > Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing such a ruling by the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. ... Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.
>
> ***Commonwealth v. Eichinger***, 591 Pa. 1, 915 A.2d 1122, 1134 (2007) (internal citations omitted). "Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." ***Commonwealth v. Stilo***, 138 A.3d 33, 35–36 (Pa. Super. 2016); ***see also In re L.J.***, 622 Pa. 126, 79 A.3d 1073, 1083–1087 (2013).

*Commonwealth v. Evans*, ___ A.3d ___, ___, 2016 PA Super 293, *3–4 (Pa. Super. 2016). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006).

With regard to the standard for conducting a traffic stop based on an officer's reasonable suspicion of DUI, "[i]n *Commonwealth v. Sands*, 887 A.2d 261 (Pa. Super. 2005), we upheld the constitutionality of the 'reasonable suspicion' standard set forth in the 2004 amendment to Section 6308(b). . . . *Sands* acknowledged the legislature's motivation to address DUI concerns through the 2004 amendment." *Commonwealth v. Feczko*, 10 A.3d 1285, 1289 (Pa. Super. 2010).

The suppression court disposed of Appellant's exclusionary challenge as follows:

> Trooper Matthew J. Klein has for approximately nine (9) years been a member of the Pennsylvania State Police. Throughout the course of his law enforcement career, Trooper Klein has received extensive DUI enforcement training well beyond the majority of most police officials, including but not limited to detection of drivers impaired by both alcohol and/or controlled substances, field sobriety testing certification, and [he] has been certified for chemical testing purposes in the use of the Datamaster breathalyzer. *See* Commonwealth Exhibit C-3 — Trooper Klein's Datamanster [sic] Certification. Trooper Klein to date has made over three hundred (300) DUI arrests.

> On Saturday, January 17, 2015, at approximately 3:30 a.m., Trooper Klein attired in a full police uniform and operating a marked police vehicle was traveling southbound on

Route 202 toward Route 1. The trooper's attention was quickly drawn to a green Honda automobile driving ahead of his police cruiser and subsequently determined to be operated by [Appellant] on his observing this motor vehicle drifting and swerving from side to side, albeit within its designated travel lane, and the driver relatedly "jerking" the car back into a more expected and straighter path of travel. Trooper Klein then followed the green Honda sedan a modest distance to the intersection of Route 202 and Route 1.

When he approached this intersection (Routes 202 and 1) the traffic light was red and [Appellant] appropriately brought his automobile to a stop. For absolutely no reason Trooper Klein could discern, [Appellant] on the traffic light cycling to green remained completely stopped with his automobile's brake lights activated for some approximately seventeen (17) to eighteen (18) seconds. *See* Commonwealth Exhibit C-1 — MVR Recording. There was no other traffic impeding [Appellant] from timely and more expectedly proceeding through the green light. *Id.* The weather and road conditions were clear. *Id.* [Appellant's] motor vehicle exhibited no signs whatsoever of mechanical problems. *Id.* As seen from Trooper Klein's vantage point, there were no observable interactions between the [Appellant] driver and the front seat passenger otherwise potentially explaining why [Appellant] continued to remain stopped at the intersection some seventeen (17) through eighteen (18) seconds after the traffic light clearly cycled to green.

Routes 202 and 1 is a major intersection comprised of five (5) travel lanes as one proceeds southbound, the direction [Appellant] was driving. There is one (1) lane for turning right onto Route 1 south, two (2) center lanes crossing over Route 1, and two (2) lanes designated for left turns onto Route 1 northbound. *Id.* From the position [Appellant s]topped his automobile, there are two (2) overhead and clearly visible lights on the intersection's far side controlling traffic crossing Route 1. *Id.* The other directions of travel comprising this intersection all have at least one (1), if not more, dedicated turning lanes and two (2) lanes for straight through driving. The intersection is extremely well lit. *Id.*

Based on his extensive and varied DUI enforcement training, Trooper Klein was well aware that the day of the week (Saturday) and the time of day (3:30 a.m.) together with his

observations that [Appellant] within his designated travel lane was drifting, weaving and "jerking" the automobile back to a more expected and straighter path of travel suggested with appreciable probability an impaired driver. [Appellant] then remaining stopped with his brake lights activated some seventeen (17) to eighteen (18) seconds while the two (2) traffic lights unquestionably visible to him were green absent any observable explanations regarding this out of the norm driving behavior further heightened Trooper Klein's suspicion that [Appellant] could very well be an impaired operator. For these reasons, Trooper Klein stopped [Appellant's] automobile on suspicion of DUI. Material to these considerations, this court finds Trooper Klein to be a most credible witness.

In light of the foregoing, this court concluded Trooper Matthew J. Klein based on the totality of material circumstances, including his direct observations of the manner in which [Appellant's] motor vehicle was being operated and extensive DUI enforcement training as well as his related professional experiences and the rational inferences drawn therefrom, had reasoned articulable grounds to reasonably suspect [Appellant] may have been an impaired driver so as to warrant additional DUI investigation. The court thus also concludes the trooper's stopping of [Appellant's] automobile was constitutionally permissible.

Suppression Court Order, 9/16/15, at n.2 (internal legal citations omitted).

Upon review, we consider Appellant's reliance on **Battaglia** and **Chase** misplaced. **Battaglia** reaffirmed a probable-cause standard for vehicle stops based on violations of the Motor Vehicle Code under the **pre-amended version** of 75 Pa.C.S. § 6308(b). **Feczko**, 10 A.3d at 1288. In **Chase**, the Pennsylvania Supreme Court held that "if police can articulate a reasonable suspicion of a Vehicle Code violation [including DUI], a constitutional inquiry into the officer's motive for stopping the vehicle is

unnecessary." ***Chase***, 960 A.2d at 120. Appellant's contrary interpretation of ***Chase*** is incorrect.

Furthermore, our review confirms support in the record for the suppression court's findings of fact and the lack of legal error. N.T., 9/11/15, at 9–35. Thus, we dispose of Appellant's suppression challenge by adopting the opinion of the trial court as our own:

> Viewing its denial of the exclusionary motion under the applicable appellate standard, this court's decision was supported by the record at bar. This court's factual findings are clearly substantiated by the instant record and it correctly applied the appropriate law to the facts. Moreover, as fact-finder, the court was permitted to weight [sic] the testimony and decide the credibility of the witnesses as it saw fit.
>
> As Trooper Klein possessed the requisite standard of reasonable suspicion to conduct a stop of [Appellant's] motor vehicle, the court did not err in denying his exclusionary motion, and this appellate complaint is meritless.

Trial Court Opinion, 6/7/16, at 11–12 (internal legal citations omitted).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017