J-A14014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAWN DERRICK WADE-PROCTOR | : | |
| | : | |
| Appellant | : | No. 1011 MDA 2021 |

Appeal from the Judgment of Sentence Entered June 25, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005594-2020

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED AUGUST 31, 2022**

Appellant, Shawn Derrick Wade-Proctor, appeals from the judgment of sentence of, *inter alia*, 3 days' to 6 months' incarceration, imposed after he was convicted of driving under the influence of alcohol or controlled substance – controlled substances, 75 Pa.C.S. § 3802(d)(1)(i); driving under the influence of alcohol or controlled substance – controlled substances, 75 Pa.C.S. § 3802(d)(1)(iii); driving on roadways laned for traffic – driving within a single lane, 75 Pa.C.S. § 3309(1); violating the duty of a driver in emergency response areas, 75 Pa.C.S. § 3327(a)(1); and operating a vehicle without official certificate of inspection, 75 Pa.C.S. § 4703(a)(1).  On appeal, Appellant solely challenges the trial court's denial of his motion to suppress the traffic stop due to a lack of probable cause.  After review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant proceeded to a non-jury trial on June 25, 2021. Prior to the trial commencing, the court held a hearing on Appellant's pending suppression motion, in which Appellant argued that the patrolling officer did not have probable cause to stop his vehicle on the day in question. At the suppression hearing, the Commonwealth called Pennsylvania State Police Trooper Shane Dressler ("Trooper Dressler") to testify. N.T., 6/25/21, at 7. Trooper Dressler testified that, on September 6, 2020, he was on patrol duty in York County, wearing his uniform and driving a marked car. *Id.* at 8-9. Trooper Dressler recalled that, at some point, he was called to back up another trooper at a traffic stop on Route 83, around mile marker 29-30 southbound. *Id.* at 9. Trooper Dressler described that he "was parked behind another trooper … who was typing a citation for the person he had pulled over, and I was monitoring my side mirror, looking for drivers who would not move over to the left lane."

*Id.* As he was doing so, Trooper Dressler recounted that he,

> observed a vehicle, it was a sedan. I don't remember what color. While I was looking in my side mirror, I observed the sedan swerve over behind me, swerve over the white line. … [T]o me[,] it appeared the vehicle was about to strike my vehicle. The vehicle then s[w]erved back over[,] back into his lane[,] in the right lane[,] and passed me. The vehicle also failed to move over to the left lane as he was passing me with my emergency lights in effect.

*Id.*

Trooper Dressler stated that he then began to follow the vehicle. *Id.* at 10. As he observed the vehicle, Trooper Dressler saw that the driver continued to weave within his lane. *Id.* Trooper Dressler said he subsequently

got behind the vehicle and initiated a traffic stop. *Id.* Trooper Dressler identified Appellant as the operator of the at-issue vehicle. *Id.* at 16.

During Trooper Dressler's testimony, the Commonwealth introduced and played the "dash cam" video from that day. *See id.* at 10-15; *see also* Commonwealth's Exhibit 1 ("Dash Cam Video"). As the Commonwealth played the dash cam video, Trooper Dressler described the events that unfolded as follows:

> [The court]: Officer, describe what you're seeing … on the video or give us context here.
>
> [Trooper Dressler]: Okay. So right now[,] I am looking in my side mirror for vehicles that are not passing in the left lane. I'm looking for vehicles that are passing in the right lane. It's an officer safety issue, and that's the law.
>
> \*\*\*
>
> [The Commonwealth]: Whose vehicle are we looking in front of?
>
> [Trooper Dressler]: We're looking at – Trooper Eric Dressler was operating that vehicle, I believe he's writing a citation right now. So I'm looking in my side mirror for vehicles who are failing to move over to the left lane, [and] at this time I think I observe the sedan begin to swerve towards my vehicle, cross over the white line, the white dash line that you can see right there, and, yep, you just saw it pass right there. It was very close to my vehicle and the vehicle in front of me.
>
> \*\*\*
>
> So right here, that vehicle right there, passed and … I would say [it was] within a foot or two of striking my vehicle and the vehicle in front of me. That's what caught my attention. I pull out and begin to follow the vehicle, trying to catch up. At this point[,] I'm trying to catch up. So right there[,] you can see the vehicle again. … [I]ts right tires look[] like [they are] touching the white line. It's still weaving within its lane, continuing right there. I go into the left lane to catch the vehicle, get behind it here momentarily, I get behind the vehicle. He fails to maintain his lane. I turn my

- 3 -

emergency lights and sirens on, … and the vehicle has a slow response to my emergency equipment, continues to travel in the shoulder, keeps going for a good bit and finally comes to a stop.

[The Commonwealth]: Pausing the video at 4 minutes and 12 seconds. … Trooper Dressler, going back to the traffic stop for a moment, were your emergency lights on when you were parked behind Trooper Eric Dressler?

[Trooper Dressler]: Yes.

[The Commonwealth]: And can you describe that section of [Route] 83, specifically leading up to the stop as cars are driving towards you?

[Trooper Dressler]: This is a straightaway. This is a straightaway from about mile marker 32 all the way until about mile marker 26 southbound. You can see clearly for miles. You can see if a state trooper has his emergency lights on, and there's, in my opinion, there's plenty of time to get over into the left lane from where I was parked.

N.T. at 13-16. At the relevant time, Trooper Dressler additionally recalled that "it was a clear day, it was daylight[,] and the road was dry." *Id.* at 8.

On cross-examination, Trooper Dressler acknowledged that Appellant's swerve, which he alleged nearly hit his vehicle, was not on the dash cam video. *Id.* at 18. Trooper Dressler also recognized that, at the time Appellant passed his vehicle, there were other vehicles in the left-hand lane, and two other vehicles — one in front and one behind Appellant — in the right-hand lane. *Id.* at 18-19. Trooper Dressler agreed that, if Appellant had slammed on his brakes, it would been unsafe for the other drivers on the road. *Id.* at 20. Nevertheless, Trooper Dressler explained that he pulled Appellant over for "failing to maintain the lane, which is what I witnessed in my side-view mirror, and I believe [Section] 3327, which is the move over law." *Id.* at 22.

On re-direct examination, when asked why he pulled Appellant over instead of the other two vehicles in the right-hand lane, Trooper Dressler answered:

> Because [Appellant's] driving was unsafe compared to the other two. I witnessed in my side mirror, like I said before, [Appellant's vehicle] swerve over with [its] right tires passing the white line that you see right there, and almost strike my vehicle, and you saw it clear as day in the video that [Appellant] was much closer than the other two vehicles. That is why that vehicle … captured my attention, and that's why I pulled that vehicle over.

*Id.* Further, Trooper Dressler agreed that Appellant could have moved into the left-hand lane prior to being adjacent with Trooper Dressler's patrol vehicle, given that there was a straightaway leading up to the spot where the patrol vehicles were pulled over. *See id.* at 23-24.

Following argument from the parties, the trial court denied Appellant's motion to suppress. In doing so, the trial court noted that — even if it credited Appellant's argument that he could not have safely moved into the left-hand lane — Trooper Dressler testified that the "primary reason" he pulled Appellant over was because Appellant "was not driving in a single lane" and had "swerved off the lane and almost hit [Trooper Dressler's] car." *Id.* at 26-27. Thus, because Trooper Dressler observed a traffic violation under Section 3309(1), which pertains to driving within a single lane, the trial court determined that Trooper Dressler had probable cause to pull Appellant over. *See id.*

The non-jury trial then immediately ensued, and Appellant was convicted of the above-stated offenses, which included, *inter alia*, driving

under the influence of alcohol or controlled substance, driving on roadways laned for traffic – driving within a single lane, and violating the duty of a driver in emergency response areas. *See id.* at 48 (the trial court's finding, among other things, that Appellant was "operating a motor vehicle on Route 83 in Northern York County on September 6th, 2020, and that his blood, with his consent, was drawn shortly thereafter, and tested positive for the scheduled one controlled substance of marijuana, that result being above the reporting limit"); *id.* at 49 (accepting Trooper Dressler's testimony that "he observed [Appellant] in his rear-view mirror swerving over and crossing the fog line on the right-hand lane of Route 83"); *id.* at 50 (crediting Trooper Dressler's testimony that, because motorists have an unobstructed view on the relevant stretch of Route 83, Appellant "would have had plenty of time upon observing the flashing lights indicating the emergency response area to have moved into the left-hand lane safely," but failed to do so).

The trial court subsequently sentenced Appellant to, among other things, 3 days' to 6 months' incarceration. Appellant timely filed a notice of appeal. The trial court then directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) and, after receiving an extension to do so, Appellant timely complied. Thereafter, the trial court issued its Rule 1925(a) opinion. In its Rule 1925(a) opinion, the trial court stated that it "determined that Trooper Dressler observed [Appellant] commit a violation of [Section] 3309(1)[, *i.e.*, driving on roadways laned for traffic – driving within a single lane,] **and [Section] 3327**[, *i.e.*,

violating the duty of a driver in emergency response areas]…, and therefore had probable cause to stop [Appellant's] vehicle."  Trial Court Opinion ("TCO"), 9/29/21, at 4 (emphasis added).[1]

On appeal, Appellant raises a single issue for our review:

> Whether the trial court erred in denying [Appellant's] [m]otion to [s]uppress the traffic stop on the basis of a lack of probable cause to stop the vehicle under either 75 Pa.C.S. § 3309 or 75 Pa.C.S. § 3327?

Appellant's Brief at 5.

At the outset, when evaluating a trial court's decision to deny a motion to suppress, we acknowledge that:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.  Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.  Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (cleaned up).

---

[1] As Appellant points out, at the suppression hearing, the trial court had not denied his motion to suppress based on a violation of Section 3327.  ***See, e.g.***, Appellant's Brief at 20; Appellant's Reply Brief at 1.

Because the trial court stated at the suppression hearing that it was denying Appellant's motion to suppress based on Trooper Dressler's observation that Appellant violated Section 3309(1) (driving on roadways laned for traffic – driving within a single lane), we address that determination first. **See** footnote 1, **supra**. Section 3309(1) provides that:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

**(1) Driving within single lane.--**A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S. § 3309(1).

Appellant argues that Trooper Dressler "did not have probable cause to stop [Appellant] for violating [Section] 3309 based on [Appellant's] brief and singular crossing of the fog line. The trial court erred when it did not suppress the traffic stop based on the lack of probable cause to initiate the stop." Appellant's Brief at 12.

It is well-established that, "[w]here a vehicle stop has no investigatory purpose, the police officer must have probable cause to support it." **Commonwealth v. Enick**, 70 A.3d 843, 846 (Pa. Super. 2013) (citing **Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*)) (footnote omitted). Here, Trooper Dressler said he stopped Appellant for "failing to maintain the lane [pursuant to Section 3309(1)], which is what I witnessed in my side-view mirror, and I believe [Section] 3327, which is the

move over law." N.T. at 22. Trooper Dressler did not represent that he pulled over Appellant because he suspected Appellant was driving under the influence and, thus, the stop was not for an investigatory purpose. As such, the stop is legal only if Trooper Dressler possessed probable cause.[2]

To establish probable cause, "[t]he officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the Vehicle Code." **Enick**, 70 A.3d at 846 n.3 (citations omitted). "Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." **Id.** (citations omitted).

Appellant asserts that "[t]he record shows that [Appellant] at most crossed the fog/berm line once prior to being pulled over by Trooper Dressler." Appellant's Brief at 12. He stresses that "[t]his Court has held that erratic driving alone does not provide probable cause to execute a traffic stop." **Id.** at 14. In support, he argues:

> In [**Commonwealth v.**] **Battaglia**, [802 A.2d 652 (Pa. Super. 2002),] the defendant was weaving within his lane of travel when the officer initially noticed his driving. **Id.** at 654. At first[,] the defendant was merely weaving in his lane and was not seen to be crossing either the center line or the berm line. **Id.** Upon noticing this[,] the officer began following the defendant. **Id.** While following the vehicle[,] the officer noticed the defendant was driving five to ten miles below the speed limit of 35 miles per hour.

_____

[2] The Commonwealth agrees that Trooper Dressler needed probable cause to stop Appellant for the traffic code violations he observed. **See** Commonwealth's Brief at 10-12.

The [o]fficer in **Battaglia** also saw the defendant make a wide right turn onto an on[-]ramp toward a highway. **Id.**

The trial court in **Battaglia** granted suppression based on the lack of probable cause. **Id.** In **Battaglia**, this Court upheld the suppression based on the Pennsylvania Supreme Court's ruling in **Commonwealth v. Gleason**, … 785 A.2d 983 ([Pa.] 2001). **Id.** at 656. In **Gleason**, the [C]ourt held that crossing the berm line two or three times, without more, could not establish probable cause to justify a traffic stop based on the driving[-]within[-]lanes[-]marked[-]for[-]travel statute. [**Gleason**, 785 A.2d at 989 (Pa. 2001)].[3]

This Court applied the holding of **Gleason** in **Commonwealth v. Garcia**, 859 A.2d 820 (Pa. Super. 2004)[,] to a situation in which a defendant crossed the fog line twice. This Court held:

> But a close reading of the **Gleason** rationale, combined with careful attention to the facts of that case, lead us to conclude that where a vehicle is driven outside the lane of traffic for just a momentary period of time and in a minor manner, a traffic stop is unwarranted. Thus, … Gleason's crossing of the berm line on two occasions for a second or two were inadequate to support a traffic stop, while [the defendant's] repeated weaving within his lane, coupled with his driving over the center double lines and the berm line four or five times, provided probable cause to support a lawful traffic stop[ in **Commonwealth v. Linblom**, 854 A.2d 604 (Pa. Super. 2004)].

**Garcia**, 859 A.2d at 823.

Appellant's Brief at 14-15.

In addition, Appellant disputes the trial court's factual finding that Appellant swerved off the lane and almost hit Trooper Dressler's vehicle. **See id.** at 15. Appellant contends that the dash cam video "makes it clear that

---

[3] We note that there were no other vehicles on the roadway in **Gleason.** **See Gleason**, 785 A.2d at 985. Thus, in finding that the stop was not justified, the **Gleason** Court recognized the lack of any evidence at the suppression hearing that the defendant's driving created a safety hazard to support a Section 3309(1) violation. **See id.** at 989.

[Appellant] was traveling on the correct side of the fog line at the time he passed the traffic stop." *Id.* Appellant also points out that Trooper Dressler testified that "he believed [Appellant] stayed one or two feet away from his vehicle while crossing the fog line and passing the initial traffic stop." *Id.* at 16 (citing N.T. at 14). Appellant says that, pursuant to *Gleason*, "a defendant's passing of the line must create a safety hazard to violate the statute." *Id.* However, he says that, "[i]n the case at hand[,] there was no apparent safety hazard created by [Appellant's] crossing of the fog line when [Appellant] corrected his vehicle prior to passing the initial traffic stop." *Id.* Thus, Appellant maintains that — to the extent the trial court credited Trooper Dressler's assertion that Appellant's momentary crossing of the fog line was too close to his vehicle, creating a safety hazard — such a finding is not supported by the record. *See id.* at 16-17.

We reject Appellant's argument. At the suppression hearing, Trooper Dressler testified that, "[w]hile I was looking in my side mirror, I observed [Appellant's] sedan swerve over behind me, swerve over the white line. … [T]o me[,] it appeared the vehicle was about to strike my vehicle. The vehicle then s[w]erved back over[,] back into his lane[,] in the right lane[,] and passed me." N.T. at 9; *see also id.* at 14 ("I'm looking in my side mirror for vehicles who are failing to move over to the left lane, at this time I think I observe the sedan begin to swerve towards my vehicle, cross over the white line, the white dash line that you can see right there, and, yep, you just saw it pass right there."); *id*. at 22 ("I witnessed in my side mirror, like I said

- 11 -

before, [Appellant's vehicle] swerve over with [its] right tires passing the white line that you see right there, and almost strike my vehicle, and you saw it clear as day in the video that [Appellant] was much closer than the other two vehicles."). Trooper Dressler also described that Appellant's vehicle "was very close to my vehicle and the vehicle in front of me[,]" and that, when Appellant's vehicle passed by, "[it was] within a foot or two of striking my vehicle and the vehicle in front of me." *Id.* at 14. While Appellant emphasizes that he was on the correct side of the fog line when he passed Trooper Dressler and stayed one or two feet away from striking Trooper Dressler's vehicle, such arguments do not undermine Trooper Dressler's testimony that he saw, from his side mirror, Appellant swerve out of the lane behind him and nearly hit his parked patrol vehicle. The fact that a collision, fortunately, did not occur does not mean that Appellant's failure to maintain his lane did not create a safety hazard.[4]

Given that Appellant's failure to maintain his lane created a safety hazard, we distinguish his case from that of the defendants in *Gleason*, *Garcia*, and *Battaglia*. As the trial court aptly discerned:

> The Superior Court in *Garcia* held that "[w]here a vehicle is driven outside the lane of traffic for just a momentary period of time **and**

_____

[4] Moreover, upon our own review of the dash cam video, we agree with the trial court that "[t]he fact that the swerving of [Appellant's] vehicle where he nearly hit the [t]rooper's vehicle could not be seen on the dash cam is of no moment." TCO at 4. As the trial court observed, "[t]he [t]rooper indicated that he saw that from his side[-]view mirror and, as a result, that would not have been captured on the dash cam, which only captured the front view." *Id.*

> **in a minor manner**, a traffic stop is unwarranted." … ***Garcia***, 859 A.2d [at] 823 … (emphasis added).  In ***Garcia***, the defendant drove over the fog line twice within the space of two blocks in response to another vehicle coming toward him in the opposite lane.  However, the instant case is distinguishable from ***Garcia*** in that not only did [Appellant] cross the fog line, when he did so, he narrowly missed hitting the [t]rooper's vehicle.  This created a risk of harm not only to himself, but to the [t]roopers parked along the side of the road as well.  ***Cf. Commonwealth v. Chernosky***, … 874 A.2d 123, 128 (Pa. Super. 2005), *appeal denied,* … 902 A.2d 1238 (Pa. 2006) (police had probable cause where [the] defendant crossed both [the] center and fog lines more than once and narrowly missed hitting telephone pole).

TCO at 4-5.  We agree with the trial court's analysis.  Accordingly, we conclude that the trial court properly denied Appellant's motion to suppress and, therefore, we affirm Appellant's judgment of sentence.[5]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2022

---

[5] Given our disposition, we need not address whether the trial court erred in denying Appellant's motion to suppress the traffic stop due to a lack of probable cause to stop his vehicle under Section 3327.