**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Orlando BUTLER, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 24, 2004.
Filed July 28, 2004.

David M. McGlaughlin, Philadelphia, for appellant.

Todd M. Mosser, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: TODD, PANELLA, and JOHNSON, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Orlando Butler ("Butler") appeals from the judgment of sentence entered May 7, 2003 by the Honorable Joseph A. Dych, Court of Common Pleas of Philadelphia County. Following a bench trial, Butler was convicted of Driving Under the Influence[1], Carrying a Firearm without a License[2], and Carrying a Firearm on Public Streets/Public Place[3]. Butler was sentenced to 48 hours to one year county incarceration on the DUI conviction and three years of reporting probation on Section 6106. No sentence was imposed under Section 6108. Butler filed a timely appeal. After careful review, we affirm.

1. 75 Pa.Con.Stat.Ann. § 3731

2. 18 Pa.Con.Stat.Ann. § 6106

3. 18 Pa.Con.Stat.Ann. § 6108

¶ 2 On appeal, Butler presents two is-sues[4] for our review:

I. Did the trial court err when it de-nied the motion to suppress evi-dence in that insufficient probable cause under the state and federal constitutions was present to justify the initial stop of Mr. Butler's vehi-cle?

II. Was the evidence insufficient as a matter of law to sustain his convic-tion for driving under the influence where:

A) No evidence was presented that Mr. Butler was driving unsafely;

B) The opinion evidence was insuffi-cient; and,

C) The blood alcohol test results sup-port an inference that his blood alcohol content was below .10 at the of the time of actual driving?

Appellant's Brief at 4.

¶ 3 We first address Butler's claim that the trial court erred in denying his motion to suppress. "Our review of a suppression ruling is limited to determin-ing whether the record as a whole sup-ports the suppression court's factual find-ings and whether the legal conclusions drawn from such findings are free of er-ror." *Commonwealth v. Battaglia*, 802 A.2d 652, 654 (Pa.Super.2002) (citations omitted). Our scope of review is limited: "we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Maxon*, 798 A.2d 761, 765 (Pa.Super.2002). "Where the record supports the findings of the suppression court, we are bound by those

facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts." *In the Interest of D.M.*, 560 Pa. 166, 743 A.2d 422, 424 (1999).

¶ 4 Butler contends that the Common-wealth failed to present sufficient evidence to establish probable cause to conduct a valid stop of Butler's vehicle. Preliminari-ly, we note that the legislature of this Commonwealth has vested police officers with authority to stop a vehicle when they have "articulable and reasonable grounds to suspect a violation of the Vehicle Code." 75 Pa.Con.Stat.Ann. § 6308(b); *see also Commonwealth v. Slonaker*, 795 A.2d 397, 400 (Pa.Super.2002). Our Supreme Court stated in *Commonwealth v. Whitmyer*, 542 Pa. 545, 668 A.2d 1113, 1116 (1995):

If the alleged basis of a vehicular stop is to permit a determination whether there has been compliance with the Motor Ve-hicle Code of this Commonwealth, it is encumbent [sic] upon the officer to artic-ulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.

*Id.* In granting police a sufficient degree of latitude to stop automobiles, our Su-preme Court in *Whitmyer*, recognized the Commonwealth's interest in "enacting and enforcing rules and regulations for the safety of those who travel its highways and roads", while at the same time protecting the privacy interests of individuals operat-ing motor vehicles. 668 A.2d at 1116. To balance the interests of both the Common-wealth and the individual, our Supreme

---

4. We note that in his Statement of Matters Complained of on Appeal filed pursuant to Pa.R.A.P. 1925(b) Butler presents a third is-sue for this Court's review, whether the evi-dence was sufficient to establish a violation of the uniform firearms act. Butler fails to raise this issue in his "Statement of the Questions Involved" in his brief filed in support of this appeal. As such, it is deemed waived.

Court in *Commonwealth v. Gleason*, 567 Pa. 111, 785 A.2d 983 (2001), held that a police officer must have specific facts to justify an intrusion into an individual's reasonable expectation of privacy in his motor vehicle. In *Gleason*, our Supreme Court addressed the issue of assessing when an officer has sufficient indicia of erratic driving to give the officer probable cause to stop a vehicle. Specifically, the defendant in *Gleason* was followed by a police officer for one quarter of a mile and over that distance, defendant's vehicle crossed the solid fog line two or three times. Additionally, there were no other cars on the road. The Court found that, "[g]iven the early morning hour, the fact that there was no other traffic on the roadway and the rather momentary nature of defendant's vehicle crossing the fog line . . . , the officer erred in believing he had justification to stop defendant's vehicle." *Id.* at 986. Further, this Court in *Battaglia, supra* found that "perceived 'erratic driving' in and of itself is not a violation of the Vehicle Code and without more, does not provide probable cause to execute a traffic stop." 802 A.2d at 657.

¶ 5 When viewing the facts of the present case under the standard of "articulable and reasonable grounds to suspect," we find that unlike *Whitmyer, Battaglia,* and *Gleason* [5], the facts here substantiate the officer's stop of Butler's vehicle on the reasonable belief that it was being operated in a careless and erratic manner at a rate of speed in excess of the posted speed limit. The uncontradicted testimony presented at the suppression hearing established that at approximately 1:00 a.m. on December 28, 2002, while on patrol as part of *operation safe streets*, in an unmarked police vehicle, but in uniform, Philadelphia Police Sergeant Perry observed a Ford Explorer driving at a very high rate of speed down Ninth Street, weaving in and out of traffic. N.T., 3/13/03 at 5–6. According to Sergeant Perry, there were other cars on Ninth Street at the time she observed Butler's vehicle. *Id.* at 7. Once Sergeant Perry spotted Butler's vehicle traveling in an erratic manner and at a high rate of speed, Sergeant Perry immediately activated her lights and sirens and pursued Butler's vehicle. *Id.* at 8. Sergeant Perry testified that at one point while she was in pursuit of Butler, Butler's vehicle went up onto the concrete median in the center of the roadway but never crossed over into the other lane of traffic. *Id.* at 22. Sergeant Perry estimated Butler's vehicle to be traveling at around 50 to 60 miles per hour in a posted twenty-five mile per hour zone. *Id.*

¶ 6 Sergeant Perry pursued Butler's vehicle for six or seven blocks until she ultimately caught up with him. *Id.* at 8. When Butler observed the police cruiser behind him he made a right-hand turn onto Reese Street. *Id.* Sergeant Perry followed Butler onto Reese Street. *Id.* Once Sergeant Perry caught up with Butler "he started to pull over at first and then decided to keep going." *Id.* Butler drove approximately two to three blocks until which time he decided to pull over. *Id.* at 28. When Butler eventually pulled over, his vehicle jumped the sidewalk. *Id.* at 9–10. Sergeant Perry, along with her partner, Officer Jamerson, exited the police cruiser and approached Butler's vehicle. *Id.* at 10. Officer Jamerson approached the passenger side and Sergeant Perry approached the driver's side of Butler's vehicle. *Id.* at 10. Butler put his

5. These cases focus on defendants who exhibited minimal signs of erratic driving. In the present case, Butler not only exhibited signs of erratic driving, but also careless driving and driving in excess of the posted speed limit, all of which are violations of the Motor Vehicle Code.

hands up in the air and rolled the windows down. *Id.* Officer Jamerson instantly screamed "gun" to which Butler responded "don't shoot me." *Id.* Sergeant Perry ordered Butler out of his vehicle. *Id.* Two other male officers arrived on the scene in addition to Sergeant Perry and Officer Jamerson. *Id.* at 11. All officers smelled marijuana in the vehicle and Butler himself "smelled like alcohol." *Id.* Sergeant Perry also observed a "spilled— open spilled container of beer inside the vehicle." *Id.* Butler was given a sobriety test in which Sergeant Perry observed Butler with bloodshot eyes, slurred speech and an overall inability to stand up. *Id.* at 14. As a result of these observations, Sergeant Perry placed Butler under arrest.

¶ 7 As is evident from the foregoing, Sergeant Perry had probable cause to stop Butler's vehicle on December 28, 2002. Butler was traveling down a populated street in the City of Philadelphia at 1:00 in the morning in excess of the posted speed limit, weaving in and out of traffic. Butler even traversed onto the concrete median separating the roadway. It took Sergeant Perry about six or seven blocks to initially catch up with Butler's vehicle after which Butler made a right turn onto Reese Street. At one point, Butler appeared to be pulling over in response to Sergeant Perry's lights and sirens, however, he paused briefly and continued to travel another two to three blocks until he eventually pulled over by jumping the sidewalk. As stated above, this supplies more than sufficient probable cause that Butler had violated the Vehicle Code. The initial stop was therefore justified.

¶ 8 We next address Butler's challenge to the sufficiency of the evidence presented at trial. Specifically, Butler contends that the Commonwealth failed to present evidence that he was driving unsafely. Further, Butler contends that the opinion evidence presented was insufficient and that the blood alcohol test results support an inference that his blood alcohol content was below .10 at the time of actual driving. We disagree.

¶ 9 In reviewing a sufficiency claim, our standard of review is well-settled: "We must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offense beyond a reasonable doubt." *Commonwealth v. Clark,* 761 A.2d 190, 192 (Pa.Super.2000), *appeal denied,* 565 Pa. 636, 771 A.2d 1278 (2001) (citations omitted). In applying the above test, "we may not weigh the evidence and substitute our judgment for the fact-finder." *Commonwealth v. Cassidy,* 447 Pa.Super. 192, 668 A.2d 1143, 1144 (1995). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Cunningham,* 805 A.2d 566, 571 (Pa.Super.2002), *alloc. denied,* 573 Pa. 663, 820 A.2d 703 (2003) (citations omitted).

¶ 10 In the case *sub judice,* Butler was convicted of driving under the influence of alcohol under the then effective statute, 75 Pa.C.S.A. § 3731.[6] Section 3731 provides that:

> (a) **Offense defined.**—A person shall not drive, operate or be in actual

---

6. Section 3731 was repealed by the legislature of this Commonwealth on September 30, 2003. P.L. 120, No. 24, § 14, effective Feb. 1, 2004. Butler was charged with and convicted under Section 3731 and, as such, we will examine this section in reviewing his sufficiency challenge.

physical control of the movement of any vehicle:

(1) while under the influence of alcohol to a degree which renders the person incapable of safe driving;

(2) while under the influence of any controlled substance, as defined in the act of April 17, 1972 (P.L. 233, No. 64) known as The Controlled Substance, Drug, Device and Cosmetic Act, to a degree which renders the person incapable of safe driving;

(3) while under the combined influence of alcohol and any controlled substance to a degree which renders the person incapable of safe driving;

(4) while the amount of alcohol by weight in the blood of:

(i) an adult is 0.10% or greater; or

(ii) a minor is 0.02% or greater.

**(a.1) Prima facie evidence.—**

(1) It is prima facie evidence that:

(i) an adult had .10% or more by weight of alcohol in his or her blood at the time of driving, operating or being in actual physical control of the movement of any vehicle if the amount of alcohol by weight in the blood of the person is equal to or greater than .10% at the time a chemical test is performed on a sample of the person's breath, blood or urine;

\* \* \*

(2) For the purposes of this section, the chemical test of the sample of a person's breath, blood or urine shall be from a sample obtained within three hours after the person drove, operated or was in actual physical control of the vehicle.

75 Pa.Con.Stat. Ann. § 3731(a)(1)-(4); (a.1)(1)-(2).

¶ 11 Butler first argues that the Commonwealth failed to present evidence that he was driving unsafely in violation of 75 Pa.Con.Stat.Ann. § 3731(a)(1) and that Sergeant Perry's opinion evidence was insufficient. Butler's argument focuses on the fact that he "drove from point A to point B, the location he was first spotted, all without incident" and "once the police observed him, he executed his maneuvers without incident", "this even includes passing cars in front of him without any indication this was not done safely." Appellant's Brief at 9. Butler's argument is unfounded. In fact, Butler's argument is in direct contradiction to the facts herein and case law.

¶ 12 In the present case, Butler admitted to drinking four drinks, "two remmies (ph) and two Budweiser's." N.T., 3/13/03 at 36. Butler testified that he had the four drinks at approximately 12:00 a.m. and that he was pulled over at approximately 12:30 a.m., thirty minutes later. Id. at 37. Sergeant Perry observed Butler's vehicle traveling at a high rate of speed down Ninth Street, weaving in and out of traffic. There were other cars present on the road at 1:00 a.m. while Butler was driving in an erratic and careless manner. Butler drove up onto the concrete median which divided the roadway from opposing traffic. Even upon observing Sergeant Perry following his vehicle with her lights and sirens activated, Butler continued at an excessive rate of speed for six or seven blocks, made a right-hand turn onto Reese Street and then failed to pull over for another two or three blocks. Butler eventually pulled over by jumping the sidewalk. When Sergeant Perry ordered Butler out of his vehicle, she performed a field sobriety test.

¶ 13 At trial, Sergeant Perry testified that based upon her eleven years of expe-

rience, DUI arrests and observations of intoxicated individuals, that Butler was impaired. Sergeant Perry's opinion was based entirely upon her observations of Butler and his conduct on December 28, 2002. Specifically, Sergeant Perry testified that Butler himself "smelled like alcohol." *Id.* at 11. Butler had bloodshot eyes, slurred speech and an overall inability to stand up. *Id.* at 14. Butler's blood alcohol content (BAC) was later determined to be .106%, which in and of itself created *prima facie* evidence of intoxication under 75 Pa.Con.Stat.Ann. § 3731(a)(4). Accordingly, the evidence is more than sufficient to prove Butler was operating his vehicle while under the influence of alcohol to a degree which rendered him incapable of safe driving.

¶ 14 In *Commonwealth v. Palmer*, 751 A.2d 223 (Pa.Super.2000), this Court held that the evidence was sufficient to support a conviction for driving while under the influence of alcohol to a degree that rendered defendant incapable of safe driving, where the arresting officer testified that the defendant exuded the odor of alcohol, that the defendant had glassy, bloodshot eyes, and that the defendant failed field sobriety tests. *Id.* Further, in *Commonwealth v. Feathers*, 442 Pa.Super. 490, 660 A.2d 90 (1995), *appeal granted in part* 543 Pa. 401, 672 A.2d 279, *affirmed* 683 A.2d 289, 546 Pa. 139, this Court found that evidence that the driver was not in control of herself, such as failing to pass the field sobriety test, can establish that the driver was under the influence of alcohol to a degree which rendered her incapable of safe driving. *Id.* In *Commonwealth v. Proctor*, 425 Pa.Super. 527, 625 A.2d 1221 (1993), *appeal denied*, 634 A.2d 223, 535 Pa. 661, the Court found the evidence sufficient to support a finding that defendant was under the influence of alcohol to the extent that he was incapable of safe driving where the defendant lost control of his

vehicle, drove over the sidewalk and planter and nearly struck a mall as well as admitted to consuming eight to twelve beers three hours prior to driving. *Id.* Additionally, with respect to opinion evidence, this Court has held that a police officer who has perceived a defendant's appearance and conduct is competent to express an opinion, in a prosecution for driving under the influence (DUI), as to the defendant's state of intoxication and ability to safely drive a vehicle. *Commonwealth v. Davies*, 811 A.2d 600 (Pa.Super.2002); *Commonwealth v. Palmer*, 751 A.2d 223 (Pa.Super.2000).

¶ 15 Butler last challenges the sufficiency of the evidence relating to his BAC. Specifically, Butler contends that the results of the blood alcohol test support an inference that his BAC was below .10% at the time he was actually operating his motor vehicle. Appellant's Brief at 9. We disagree.

¶ 16 In 1996, following the declaration of 75 Pa.Con.Stat.Ann. § 3731(a)(5) as unconstitutional by our Supreme Court in *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1996), the legislature amended Section 3731 to include subsection 3731(a.1). *See Commonwealth v. Murray*, 749 A.2d 513 (Pa.Super.2000) (en banc). Section 3731(a.1) modified Section 3731(a)(4) by providing that the blood alcohol content at the time of testing was *prima facie* evidence of the blood alcohol content at the time of driving, if the chemical test of a sample of the person's breath, blood or urine was obtained within three hours after the person drove, operated or was in actual physical control of the vehicle. *Murray*, 749 A.2d at 519; 75 Pa.Con.Stat. Ann. § 3731(a.1)(1)-(2).

¶ 17 In the present case, the blood alcohol test was conducted at both 3:00 a.m. and 3:45 a.m., both times within three

hours after Butler drove his vehicle. N.T., 3/13/03 at 52. The Blood Analysis Report indicated that Butler's BAC was .106% and .112% respectively. *Id.* at 52. The trial court properly utilized the lower of the two readings. *Id.* at 55. Even utilizing the lower of the two readings, the fact remained that Butler's BAC was .106%, and as such, the Commonwealth established that Butler's blood alcohol content reflects an amount above 0.10% and accordingly, the Commonwealth made out a *prima facie* case under 75 Pa.Con.Stat.Ann. § 3731(a)(4). *See Commonwealth v. Yarger,* 538 Pa. 329, 648 A.2d 529 (1994).

¶ 18 Accordingly, we find that the evidence supports Butler's conviction under 75 Pa.Con.Stat.Ann. § 3731.

¶ 19 Judgment of Sentence affirmed.