**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TODD ALLAN NELL | : | No. 477 MDA 2019 |

Appeal from the Order Entered February 15, 2019
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0006141-2018

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED DECEMBER 15, 2020**

The Commonwealth of Pennsylvania appeals from the order entered on February 15, 2019, granting a motion to suppress filed by Todd Allan Nell.[1] The Commonwealth claims the suppression court erred in finding the investigating officer lacked probable cause to stop Nell for a violation of 75 Pa.C.S. § 3361, and its legal conclusions do not flow from its factual findings as determined at the suppression hearing. After careful review, we affirm.

The court set forth the factual history as follows:

Officer Ryan Henry was called to the stand and he testified that, on August 14, 2018 at approximately 2:10 a.m., he turned onto Stock Street in Hanover Borough, York County. Immediately

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The Commonwealth has indicated the court's order will terminate or substantially handicap its prosecution in the criminal matter. **See** Notice of Appeal, 3/18/2019 (Rule 311(d) Certification); Pa.R.A.P. 311(d).

upon making this turn, Officer Henry observed oncoming headlights, which the officer estimated were travelling some forty miles per hour. Officer Henry was "pretty sure" the vehicle was travelling at a high rate of speed. The vehicle having passed him, Officer Henry noted it was making a right onto North Carlisle Street and Officer Henry, who would have been pointed 180 degrees from the suspect's initial path of travel, turned left onto Eichelberger Street with the intention of ending up behind the suspect vehicle to better gauge its speed via pacing. Having travelled through a series of alleys, the officer caught a glimpse of taillights and stated that their distance evinced in him a belief that the vehicle was travelling at a high rate of speed. The officer testified that as he arrived at and turned onto Maple Avenue, he observed the taillights to be some distance ahead. The officer observed the vehicle to go up a slight incline and to disappear. The officer testified that the vehicle accelerated away from an intersection. Officer Henry stated that the vehicle approached train tracks and veered to the left; however, as the road in question is not a divided roadway, the officer could not be sure that the vehicle was in the oncoming travel lane. More specifically, the officer testified to the following:

> It's in the 400 block of Maple Avenue, and directly ahead of the vehicle there's a set of train tracks. The [t]rain tracks are not -- they're at an angle across Maple Avenue. Directly after the train tracks, there's a dip, a pretty significant one. You'll see on the video here it will show it, and then the roadway continues to a slight gradual right-hand turn, which if we were in daylight, you would see -- you can't see down the roadway from this angle here.

The officer, crossing the train tracks, activated his lights and sirens and conducted a traffic stop of the vehicle. The officer informed the [trial c]ourt that "[t]he speed limit on Stock Street is 25; the speed limit on Carlisle Street is 35; and the speed limit on Maple Avenue is 25 miles per hour, most of which is residential in all three areas." The officer described how traffic at that hour is limited. The officer also opined that Hanover has pedestrians out at that hour, but admitted that there were none to be seen in the video. The officer also described how there is parking at various points alongside the roadways on which the pursuit occurred.

On cross-examination, defense counsel confirmed with the officer that this incident occurred in defense counsel's own

- 2 -

neighborhood. Defense counsel then elicited that the street parking on Stock Street would not have been on [Nell's] side of the road. Discussing the beginning of the dashcam, the officer agreed with defense counsel that there were no other cars in the video. The officer admitted that his Affidavit of Probable Cause contained no allegation of [Nell] running a red light or a stop sign and the officer could not remember if [Nell] had properly utilized turn signals. The following exchange then occurred:

Defense: And you don't follow Eichelberger all the way up. You turn into I think it's an alley there?

Officer: There is an alley there.

Defense: It says do not enter?

Officer: Yes.

Defense: Right?

Officer: It sure does.

Defense: And that leads you to another alley?

Officer: Yes.

Defense: Which leads you to another alley, and you eventually get back to Carlisle Street?

Officer: Yes.

Defense: Right?

Officer: Yep.

The officer also testified to the following:

Maple Avenue is not divided, so as far as weaving, I can't testify to that, but going over the train tracks, you can clearly see the vehicle move to the left-hand side to avoid a dip. The dip is clearly shown on the video because I hit it.

Finally, [the trial court noted] that the Commonwealth conceded that any observations of speed in the officer's vehicle were infirm

as they intended to make no showing regarding "certifications, the calibrations, and all that jazz."

Suppression Court Opinion, 8/22/2019, at 3-6 (record citations omitted).

On November 7, 2018, Nell was charged with driving under the influence of alcohol or controlled substance (3rd and/or subsequent offense), driving vehicle at an unsafe speed, driving under the influence of controlled substance (schedule I – 3rd or subsequent offense), driving under the influence of controlled substance (schedule I, II, or III – 3rd or subsequent offense), driving under the influence of alcohol or controlled substance (3rd and/or subsequent offense), and driving under the influence of alcohol or controlled substance.[2]

Nell filed a suppression motion in December of 2018. A hearing was held on the matter on February 15, 2019. At the conclusion of the hearing, the suppression judge explained his reasoning as follows:

> So I turn to the facts of this case, … we have the officer going down the road this way. [Nell] is coming this. They pass. He believes he's going too fast. He's a police officer. Certainly, police officers are trained to detect such [a] sort of thing, and he decides to put forth a pursuit.
>
> Instead of making a U-turn, I think the police officer was pretty smart, he knew where [Nell] was probably headed. He knew a quicker way to get there. He knows his jurisdiction, and he took some side streets and alleys, and the testimony was that it took him a while to catch up.
>
> I think there was some testimony about the dip in the road where he thought that [Nell] took that a little too fast.

---

[2] 75 Pa.C.S.A. §§ 3802(a)(1), 3361, 3802(d)(1)(i), 3802(d)(1)(iii), 3802(d)(3), and 3802(b), respectively.

As I see it, those are basically the facts upon which the police officer testified or based his stop. I have no doubt that [the officer] believed [Nell] was driving too fast. I suspect that [the officer] did think he took it longer than it should have to catch up to [Nell], but looking for specific facts that support the probable cause stop, I do not find them present in this case, and I'm going to grant your motion for suppression.

As I said, it's an extremely close case. It is fact-specific. I just don't believe there were quite enough facts there to justify the stop.

Certainly, no criticism of the police officer. I think he did everything by the book. In my judgment, this is just not a case where probable cause was present for the stop.

N.T., 2/15/2019, at 34-35. The court subsequently entered an order, granting Nell's motion, stating "the case lack[ed] probable cause." Order, 2/15/2019. The Commonwealth filed this timely appeal.[3]

Based on the nature of the Commonwealth's claims, we address both arguments together. First, the Commonwealth contends the suppression court erred in finding the investigating officer was credible but lacked probable cause to suspect Nell of violating Section 3361. **See** Appellant's Brief, at 12. The Commonwealth states:

[It] presented the testimony of Officer Henry, who testified that [Nell] was traveling at a high rate of speed in excess of the posted speed limits through various potential hazards late at night when it was dark, including cresting a hill and crossing railroad tracks, and swerved towards the oncoming traffic lane to avoid a hazard

---

[3] On June 10, 2019, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth complied with the court's directive. The court issued a Pa.R.A.P. 1925(a) opinion on August 22, 2019.

in the road. Given the conditions which existed at the time, Officer Henry's estimation that [Nell] was traveling at least 40 miles per hour, based on his ten years of experience, is sufficient to establish probable cause to suspect a violation of [Section] 3361.

*Id.*, at 12.

The Commonwealth points to the following conditions, as testified to by Officer Henry, which it claims constitute independent bases for the stop: (1) Nell's estimated high rate of speed through various roadways, a majority of which were residential; (2) the vehicle crested a hill that was described as "some hazard;" (3) there was the potential hazard of cross traffic at different intersections; (4) the vehicle accelerated across train tracks and there was a dip on the other side of the roadway which Nell "kind of" avoided by going into the oncoming traffic lane; (5) it was 2:00 a.m.; and (6) there were pedestrians out at that time but none were seen on the video. *Id.*, at 13.

The Commonwealth also claims the suppression court erred by characterizing Officer Henry's testimony as a bald assertion that pedestrians could have been out and about at that time in the morning. *See id.*, at 14. Furthermore, the Commonwealth asserts the court's "unsupported claim that 'the law recognizes that the pursuit of criminals is a highly competitive process in which the reputations and egos of officers play a role' was created out of the whole cloth, and should have no bearing on the outcome of the instant appeal." *Id.*, at 15-16.

In its second argument, the Commonwealth contends the suppression court's legal conclusions do not flow from its factual findings because the court found Officer Henry "credible." *Id.*, at 16. It states:

> Despite the fact that the court erroneously omitted facts which were proven, the facts found by the suppression court, combined with the statement that court believed Officer Henry thought [Nell] was driving too fast for the conditions existing at the time, the logical conclusion to be drawn is that the officer possessed probable cause to effectuate a traffic stop.

*Id.* at 18. The Commonwealth further alleges the court attempted "to walk back [its previous] findings in open court of Officer Henry's credibility in its [Rule] 1925(a) opinion, qualifying such a finding through *post hoc* limitations thereof, calling the statement an attempt[] at mollifying a disappointed officer and an acknowledgement that the officer believed he possessed probable cause." *Id.*, at 19 (reproduced record citation and internal quotation marks omitted).[4]

As a prefatory matter, we begin with our well-settled standard of review:

---

[4] It merits mention that several times throughout its brief, the Commonwealth references the Rule 1925(a) opinion as being crafted by or the product of the suppression court's chambers or law clerk. *See i.e.*, Commonwealth's Brief, at 14 ("The suppression court's clerk, after the fact, as well as the actual court's findings from the bench"), 15 (the "[Rule] 1925(a) Opinion crafted by the Judge's chambers"), 16 ("the lower court's chambers invented a legal concept"), and 19 ("The Court's chambers' attempts to walk back this finding in its Rule 1925(a) Opinion"). We decline to delve into the Commonwealth's intention with these peculiar statements; nevertheless, we remind the Commonwealth that the Honorable Michael E. Bortner presided over the matter, including the suppression hearing, and his signature is attached to the Rule 1925(a) opinion.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

*Commonwealth v. Menichino*, 154 A.3d 797, 800 (Pa. Super. 2017), *appeal denied*, 169 A.3d 1053 (Pa. 2017) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Bush*, 166 A.3d 1278, 1282 (Pa. Super. 2017) (citation omitted).

An officer must possess probable cause to effectuate a traffic stop based on a suspected violation of the Motor Vehicle Code. *See Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa. Super. 2015). Probable cause exists "when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed." *Id.*, at 996-997.

Here, Officer Henry's reason for stopping Nell's car was based on a purported violation of Section 3361. Section 3361 provides:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S.A. § 3361.

In disposing of the issue in the present matter, the suppression court relied on this Court's decision in *Commonwealth v. Minnich*, 874 A.2d 1234 (Pa. Super. 2005). In *Minnich*, a police officer initiated a traffic stop based on an alleged Section 3361 violation after he observed the defendant take "a sharp bend at a very high rate of speed on an icy roadway." *Id.*, at 1237. The officer could not confirm whether there was other traffic on the road at the time, but stated that there could have been an accident by the way the defendant was hugging the shoulder. Based on the officer's investigation, the defendant was charged with the summary offense of driving while under suspension for a prior conviction of driving under the influence of alcohol.

A district court found the defendant guilty of the suspended license offense. The defendant subsequently appealed and filed a motion to suppress, which the trial court denied, finding "the stop to be justified based on [the officer]'s testimony showing a risk of causing an accident because [the defendant] sped around a curve and, in so doing, did not have a clear view of

what lay ahead." *Id.* The trial court then upheld the district court's decision, finding the defendant guilty of the offense and sentencing him to 90 days' incarceration.

In affirming the trial court's decision, a panel of this Court analyzed precedent concerning Section 3361 and opined:

> In a ... case that addressed ... Section 3361, the Commonwealth did not offer proof of actual or estimated speed, but a police officer testified to observing the defendant-driver "traveling at an extreme rate of speed." *Commonwealth v. Heberling*, 451 Pa. Super. 119, 678 A.2d 794 ([Pa. Super]. 1996). In response to a claim that the evidence was insufficient to support the conviction, the panel reiterated that **the actual speed is irrelevant to a Section 3361 inquiry**. Rather, **the focus is on the surrounding circumstances, including "the amount of traffic, pedestrian travel and weather conditions, ... the nature of the roadway itself (***e.g.***, whether four-lane, interstate, or rural; flat and wide, or narrow and winding over hilly terrain; smooth-surfaced, or full of potholes; clear, or under construction with abrupt lane shifts.)**" *Id.* at 796. Based on the police officer's testimony that the defendant was approaching an intersection and a hill crest at an extreme rate of speed, we upheld the trial court's judgment of sentence, even though weather conditions were clear and normal and no other traffic was affected nor were any pedestrians at risk. *See id.* at 795, 797.
>
> Similarly, in *Commonwealth v. Johnson*, 2004 PA Super 80, 846 A.2d 161 (Pa. Super. 2004), there was no evidence presented of a precise speed. Nevertheless, we concluded that the defendant operated his vehicle at an unsafe speed based on "the evidence adduced at the scene of the accident, including the fact that the victim was struck with great force" and that the road in question was unlit and had a curved, ascending grade leading to the crest of a hill. *Id*. at 165-66.
>
> In *Commonwealth v. Butler*, 2004 PA Super 294, 856 A.2d 131 (Pa. Super. 2004), we determined that an officer did have probable cause to stop a defendant's vehicle for violating the Vehicle Code based on the reasonable belief that the vehicle was

- 10 -

being operated in a careless and erratic manner at a high rate of speed, stating in part:

> Butler was traveling down a populated street in the City of Philadelphia at 1:00 in the morning in excess of the posted speed limit, weaving in and out of traffic. Butler even traversed onto the concrete median separating the roadway. It took Sergeant Perry about six or seven blocks to initially catch up with Butler's vehicle after which Butler made a right turn onto Reese Street. … The initial stop was therefore justified.

*Id*. at 135.

\* \* \*

> In the case *sub judice*, ... [the defendant]'s single act of "hugging the east part of the shoulder" of the road did not provide a sufficient basis ... to stop him. The question remains, then, whether the act of speeding, at the approach to an intersection, when the speed is estimated by the observing officer, with no other traffic in the area, when the officer observes "a lot of dust and cinders" blowing up from the icy roadway as the vehicle comes around a sharp curve as it crests a hill, establishes a violation of the driving-vehicle-at-safe-speed statute, Section 3361. We have carefully reviewed the record and conclude that the suppression court's factual findings of the surrounding circumstances are sufficient for the trier of fact to have concluded beyond a reasonable doubt that [the defendant] was operating his vehicle at an unsafe speed. Accordingly, we conclude that the stop of [the defendant]'s vehicle was lawful, and the trial court properly denied [his] motion to suppress.

*Minnich*, 874 A.2d at 1238-1239 (emphasis added).

Turning to the present matter, the suppression court granted Nell's motion based on the following:

> The officer was passed by a vehicle and he estimated its speed as excessive. We must note that Officer Henry was only "pretty sure" that [Nell] was travelling at a high rate of speed. The estimation of forty was suspect based upon the officer's own testimony. Nonetheless, we address the estimation. In

- 11 -

***Commonwealth v. McCandless***, our Supreme Court determined that an officer's observations that a vehicle was moving faster than others observed was, absent more, insufficient to form probable cause for speeding. 648 A.2d 309, 311 (Pa. 1994). There is a slight distinction in that, in ***McCandless***, the officer, unlike the officer in our case, could not even provide an estimation of the defendant's speed. This distinction appears meritless in light of ***Commonwealth v. Whitmyer***, which describes an insufficient estimation of speed in light of it not having been made over the proscribed distance. 668 A.2d 1113, 1117-1118 (Pa. 1995) (superseded by statute, on other grounds, as recognized in, e.g. ***Commonwealth v. Ulman***, 902 A.2d 514, 518 (Pa. Super. Ct. 2006) (Noting that ***Whitmyer*** was decided before the reformation of 75 Pa.C.S.A. § 6308(b) to include the lesser reasonable suspicion standard)). This stated, we ask if there is anything additional that can be added to Officer Henry's estimation of [Nell]'s speed as being forty in a twenty-five.

Combining the testimony of Officer Henry with the dashcam video observed by this Court *multiple times*, we can state clearly that Officer Henry was not able to observe [Nell]'s driving for much of the pursuit as Officer Henry was taking a roundabout drive in an attempt to get behind [Nell]'s vehicle. The officer succeeded in doing so, but his circuitous journey through a maze of alleyways, to include entering the wrong way in one of those alleys, left him far behind [Nell]. This Court's observation of the video leaves it convinced that Officer Henry's good instincts regarding where [Nell] intended to drive to led the officer to end up behind [Nell]'s vehicle but at a disadvantageous point. Simply put, the officer's circuitous journey through the alleyways gave [Nell] sufficient time to end up far in advance of the officer once the officer returned to the main roadways. No useful conclusions regarding [Nell]'s speed could be garnered from this portion of the video. We continue on with what can be observed in conjunction with the officer's testimony.

The officer noted that [Nell] swerved around some railroad tracks and would have been in the oncoming lane whilst negotiating an immediate blind turn. Of course, the officer was unsure whether [Nell] was *actually* in the oncoming lane. The video did not reveal, in any conclusive way, [Nell]'s vehicle swerving. The officer asked this Court to believe that [Nell] was in the opposing lane because the officer stated that he hit the dip that [Nell] avoided. Of note, the officer testified that, Maple

- 12 -

Avenue being undivided, he could not ascertain whether [Nell] was weaving, which, to at least some extent, calls into question his ability to discern [Nell] moving left to avoid the dip. To this, we add, as is attendant to all pursuits in which an officer must catch a suspect vehicle, the officer had to perceptibly speed in order to narrow the gap. Our review of the video did not reveal that any excessive speeding was necessitated on the part of the officer beyond what is typical to close the gap created by the officer having to maneuver into a pursuit position. Also included in our calculus, the defense convincingly demonstrated through cross-examination that [Nell] did not threaten any parked vehicles. And by the officer's own admission, no persons were observed to have been imperiled by [Nell]'s driving. The officer simply made a bald assertion that at 2:00 a.m. there could have been persons out and about. The totality of the Commonwealth's presentation of evidence did not convince this Court that probable cause existed. Each piece of evidence that might have added to the totality of the circumstances was counterbalanced by some fact militating against drawing the conclusion that the Commonwealth asked this Court to make.

To the extent that this Commonwealth stands upon the officer's testimony, an officer's recounting of a vehicle pursuit that contains repeated assertions that the vehicle was travelling at a high rate of speed does not settle the issue as to whether the vehicle was actually travelling at a high rate of speed. To recycle a familiar legal concept, the law recognizes that the pursuit of criminals is a highly competitive process in which the reputations and egos of officers play a role. It is for a reviewing court to divine, as best as possible, whether the officer's observations were credible. For the foregoing reasons, we did not reach the same conclusions as the officer. And this brings us to the Commonwealth's complaint that our decision stands in contrast to our statements regarding, e.g. the officer doing things by the books. We would respond that rarely is anyone totally credible or incredible. Our attempts at mollifying a disappointed officer were simply an acknowledgment that the officer believed he possessed probable cause. This, of course, is not the standard. Were it, suppression hearings would be reduced to rubber-stamping the officer's evaluation. The Commonwealth is shrewd to identify our compliments to the officer as evidence of our supposed conclusion that everything he recounted was credible. Nonetheless, while we do not believe that the officer misrepresented anything, we believe it is clear from the transcript that we did not believe the

- 13 -

facts supported the officer's conclusions vis-à-vis probable cause to perform a traffic stop for speeding.

Suppression Court Opinion, 8/22/2019, at 7-11 (italics in original).

After careful review of the certified record, including the dashcam video, we cannot find error in the suppression court's disposition in this matter. We recognize, as did the suppression court, that this is a close case based on a unique set of circumstances. There is no dispute that Officer Henry was an experienced law enforcement officer. His testimony, offered at the suppression hearing, established that: (1) he was "pretty certain" Nell was traveling at high rate of speed when they passed each other;[5] (2) Officer Henry made the decision to catch up to Nell's vehicle by turning down a street and then traveling by way of alleyways so he was not directly behind Nell for several blocks and as a result, Nell was "pretty good distance" ahead for much of the pursuit;[6] (3) the officer observed Nell's vehicle go up a "slight incline" and then disappeared on the other side;[7] (4) at one point, the officer observed Nell's vehicle approach a set of train tracks and veer to the left side of the road, but "the road [was] not a divided roadway, so [the officer could not] be

---

[5] N.T., 2/15/2019, at 4.

[6] *Id.*, at 5.

[7] *Id.*

- 14 -

100 percent certain that it was the oncoming travel lane;"[8] and (5) the incident took place in a residential area at 2:00 a.m. where traffic is limited, but there are "pedestrians that [were] out at that time, although none are seen in the video."[9]

Furthermore, when asked about parking, Officer Henry stated:

> On Stock Street there is -- before he got to Eichelberger Street, there is parking on the right-hand side and left, which would be his right and my left.
>
> There's parking on his right as he's approaching. As he crossed Eichelberger Street, there is parking in the first block but on the right-hand side. The roadway at that point does become divided by a yellow line. Although the roadway doesn't shrink in size, it becomes [a] bottle neck, and unfortunately, you can't see it on the [video] because the car is parked on the right and the addition of two lanes it's kind of a tight fit there.

N.T., 2/15/2019, at 17. However, on cross-examination, the officer acknowledged that there were no parked cars on Stock Street on Nell's side of the lane, and there were no other cars in the video, so it was only in this one block did the officer observe Nell pass parked cars. *Id.*, at 18, 21-22.

Based on the totality of the circumstances, we agree with the suppression court that Officer Henry did not articulate specific facts to

_____

[8] *Id.*, at 6.

[9] *Id.*, at 16.

establish probable cause to effectuate a traffic stop wherein Nell was traveling at a speed in violation of Section 3361.[10]

Moreover, the Commonwealth's argument does not persuade us otherwise. To the extent the Commonwealth focuses on the officer's estimation of Nell's speed, we reiterate that the actual speed is irrelevant to a Section 3361 inquiry, and that an officer's observations that a vehicle was moving faster than others observed is, without more, insufficient to form probable cause for speeding. *See Minnich*, 874 A.2d at 1238, and *McCandless*, 648 A.2d at 311. Due to the lack of specific, articulable, and objective facts in the record demonstrating "the surrounding conditions" to support the officer's estimation, the Commonwealth has failed to establish that Nell was driving at unsafe speed. *Minnich*, 874 A.2d at 1238.[11]

_____

[10] Notably, while Officer Henry testified he purportedly observed Nell to have been in the oncoming traffic lane as he veered to avoid a dip in the road, the officer did not charge him with failing to drive on the right side of the road under 75 Pa.C.S.A. § 3301(a). Likewise, he did not testify that he observed Nell fail to stop at intersection with a stop sign pursuant to 75 Pa.C.S.A. § 3323.

[11] It merits mention the Commonwealth relies on *Heberling*, *supra*, to support its argument that Officer Henry possessed probable cause to stop Nell based on the surrounding conditions. *See* Appellant's Brief, at 15. We find that *Heberling* is distinguishable from the present matter. In *Heberling*, the officer observed the defendant approaching an intersection and a hill crest at an extreme rate of speed. A panel of this Court upheld his conviction even though the weather conditions were clear, no other traffic was affected, and no pedestrians were at risk. Whereas, here, the officer was only "pretty sure" that Nell was travelling at a high rate of speed, and there was a mere mention of a slight incline.

Furthermore, much of the Commonwealth's argument asks us to look at the evidence in a light most favorable to it. We reiterate that our standard of review concerning the grant of a suppression motion is to "consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." *Menichino*, 154 A.3d at 800. As our review of the facts presented at the suppression hearing demonstrates, we have complied with our standard, and because the record supports the suppression court's findings and legal conclusions, we will not disturb its ruling. *See id.*

Lastly, as to the Commonwealth's second argument, it conflates a credibility determination with a finding of probable cause, which are two distinct determinations. While a court may find an officer was credible in his investigation, that does necessarily not equate to a finding of probable cause. Here, the court found that despite the officer's credible observations, the Commonwealth did not meet its burden in establishing that he possessed

---

Likewise, *Minnich*, *Johnson*, and *Butler* are also distinct from the matter at hand. In *Minnich*, the officer observed the defendant take a sharp bend at a very high rate of speed on an icy roadway, and there was a lot of dust and cinders blowing up from the vehicle's path. In *Johnson*, while there was no evidence of the exact speed, the defendant caused an accident which caused the victim to be struck with great force, and there evidence that the road was unlit and involved a curved hill. In *Butler*, the defendant was traveling down populated streets in Philadelphia, weaving in and out of traffic, and drove on the median. Here, on the other hand, the facts do not involve conditions that were similar, such any icy roadway, an accident, or congested streets.

probable cause to stop Nell's vehicle based on a Section 3361 violation. Further, the Commonwealth misconstrues the court's findings at the suppression hearing and its statements in its Rule 1925(a) opinion. A review of the transcript and opinion reveal that the court was not contradicting itself; rather, in the opinion, the court was merely extrapolating on its findings at the hearing. Therefore, we conclude the Commonwealth's issues do not merit relief. Accordingly, the court did not err in granting Nell's motion to suppress.

Order affirmed.

President Judge Emeritus Stevens joins the memorandum.

Judge McLaughlin files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2020