J-S39005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
         v.   :
  :
  :
BYRON ALFORD MARSHALL   :
  :
         Appellant   :   No. 3148 EDA 2024

Appeal from the Judgment of Sentence Entered October 18, 2024
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0002231-2022

BEFORE: STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.:         **FILED APRIL 29, 2026**

Appellant, Byron Alford Marshall, appeals from his judgment of sentence of six months' probation for driving under the influence – general impairment ("DUI"), 75 Pa.C.S.A. § 3802(a)(1). Appellant argues that the arresting officer lacked reasonable suspicion to stop his vehicle and lacked probable cause to arrest him for DUI. Appellant further argues that the evidence was insufficient to sustain his conviction. We affirm.

On November 11, 2021, Appellant was arrested and charged with DUI. Subsequently, Appellant filed a motion to suppress. Following an evidentiary hearing, the court entered the following findings of fact:

On October 9, 2023, Trooper Mario Solis testified at the suppression hearing.

Trooper Solis testified he is employed with the Pennsylvania State Police.

He has been employed as a Pennsylvania State Police Trooper for four years.

Trooper Solis testified he had two years of experience in November of 2021.

Trooper Solis testified he received training in standard field sobriety testing and Advanced Roadside Impaired Driving Enforcement ("ARIDE"). Trooper Solis testified he made 49 DUI arrests by November of 2021.

Trooper Solis testified he was on duty on November 11, 2021, at about 2:15 AM.

Trooper Solis testified he was in the area of 1-95 at about mile marker 10.5 in Ridley Township, Delaware County. Trooper Solis was oriented towards the southern lanes of travel on 1-95.

Trooper Solis testified he observed a silver sedan travelling in the left lane, approaching Trooper Solis, with its left turn signal activated for an extended period of time.

Trooper Solis identified [Appellant] as the person that he came in contact with on November 11, 2021.

Trooper Solis testified he was in uniform and operating a marked patrol vehicle.

Trooper Solis testified his patrol vehicle was oriented towards the southern lanes of travel of 1-95, and he observed the silver sedan travelling in the left lane approaching his position.

Trooper Solis testified the silver sedan had its left turn signal on.

Trooper Solis testified he entered the southern lane of travel in the left lane.

Trooper Solis testified the silver sedan remained in the left lane for an extended period of time with its turn signal activated.

Trooper Solis testified the silver sedan was a Chevrolet, and it merged into the left center lane.

Trooper Solis testified he clocked the silver sedan traveling at 90 miles per hour in a posted 55 miles per hour speed limit zone.

Trooper Solis testified he observed the silver sedan weave to the left, where it began straddling the lane dividers for an extended period of time.

Trooper Solis testified he observed the silver sedan re-enter the left center lane, and a short time later, it weaved to the left and began straddling the lane dividers again. Trooper Solis testified he initiated the patrol vehicle emergency equipment to initiate a traffic stop from mile marker 8.1 to 7.5.

Trooper Solis testified the silver sedan did not stop in an available space on the right shoulder.

Trooper Solis testified the silver sedan continued more than half a mile and stopped on the right shoulder.

Trooper Solis testified he and Trooper Wendling exited the patrol vehicle and approached the passenger side of the silver sedan.

Trooper Solis testified Trooper Wendling made initial contact with the occupants because the driver window was rolled up.

Trooper Solis testified Trooper Wendling and he returned to the patrol vehicle to verify the license, registration and insurance.

Trooper Solis testified Trooper Wendling continued to verify the information, and he exited the patrol vehicle, re-engaged [Appellant] and directed him to the front of the patrol vehicle.

Trooper Solis testified [Appellant] was the driver of the silver sedan, and a female was the front right seat passenger.

Trooper Solis testified that when [Appellant] exited the silver sedan, Trooper Solis detected a heavy cologne odor.

Trooper Solis observed [Appellant]'s eyes were bloodshot.

Trooper Solis testified in his training and experience in DUI arrests and other criminal investigations, the odor of cologne, perfume, or cigarette smoke is usually an indicator that narcotics or the presence of alcohol may be being masked.

Trooper Solis testified that he noted [Appellant]'s speech was slightly slurred, which included stuttering.

Trooper Solis testified [Appellant] indicated he was traveling from Philadelphia to his home.

Trooper Solis testified [Appellant] denied drinking alcohol.

Trooper Solis testified [about] the phases to DUI detection including the vehicle observation phase, the personal contact phase, and the standardized field sobriety testing.

Trooper Solis testified [Appellant] performed the Horizontal Gaze Nystagmus ("HGN"), walk-and-turn, and one-legged stand field sobriety tests.

Trooper Solis testified the HGN is administered twice for each eye to check for equal pupil size and tracking, and resting nystagmus.

Trooper Solis testified that during [the] HGN test, he looked for the clue of the lack of smooth pursuit in both eyes.

Trooper Solis testified that during the walk-and-turn test, he looked for clues during the instruction and walking phases.

Trooper Solis testified [Appellant] failed to maintain his balance during the instruction phase, took an incorrect number of steps during the walking phase, stopped during the eighth step (of nine steps) and raised his arms to balance.

Trooper Solis testified [Appellant] displayed more than two clues of impairment during the walk-and-turn test.

Trooper Solis testified he looked for four clues during the one-legged stand, including putting a foot down, raising arms for balance, hopping, and swaying.

Trooper Solis testified he observed [Appellant] put his foot down, swayed, and raised his arms for balance.

Trooper Solis testified his opinion [was] that [Appellant] was impaired because he observed indicators during the vehicle

motion phase, personal contact phase, and standard field sobriety tests.

Trooper Solis testified he believed [Appellant] was incapable of safely operating a motor vehicle.

Trooper Solis testified he did not administer a PBT or the ARIDE test.

Trooper Solis testified he placed [Appellant] under arrest, read him the DL-26, and [Appellant] refused to submit to have his blood withdrawn.

Trooper Solis testified [Appellant] was transported to the Pennsylvania State Police Media barracks, processed and released.

Trooper Solis testified the patrol vehicle was equipped with an MVR.

Trooper Solis identified Exhibit "CS-1" as the MVR footage and explained the events.

Trial Court Order, 2/15/2024, at 2-9 (Findings of Fact) (cleaned up; citations omitted).

Based on Trooper Solis' observations while the vehicle was in motion, the court concluded that the trooper had reasonable suspicion to stop the vehicle to administer standardized field sobriety testing. *Id.* at 20. Further, the court concluded that based on the trooper's observations of the way Appellant drove and the evidence of impairment Appellant exhibited upon exiting the car and during field sobriety tests, the trooper had probable cause to arrest Appellant for DUI. *Id.* at 21.

After a non-jury trial, the court found Appellant guilty of DUI and other traffic offenses and sentenced him to six months' probation. Appellant filed a

timely notice of appeal, and both Appellant and the court complied with Pa.R.A.P. 1925.

Appellant raises three issues in this appeal:

1. Whether the trial court erred by denying Appellant's motion to suppress evidence where a traffic violation for failure to discontinue turn signal and the officer's initial observation of the driver are insufficient to support reasonable suspicion that [Appellant] was driving a vehicle at a time that he was incapable of safe driving after he imbibed alcohol or consumed a controlled substance thereby making the extension of the traffic stop unconstitutional in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution?

2. Whether the trial court erred by denying Appellant's motion to suppress because when taking into consideration the totality of the circumstances of the traffic stop along with the standard field sobriety tests the officer lacked probable cause to arrest [Appellant] for Driving Under the Influence of Alcohol or Controlled Substance in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution?

3. Whether there is insufficient evidence to sustain the non-jury trial verdict of guilty for the charge of Driving Under the Influence, 75 Pa.C.S.A. § 3802(a)(1), because the Commonwealth failed to establish beyond a reasonable doubt that [Appellant] imbibed alcohol or that he was incapable of safely driving, operating or being in actual physical control of the movement of the vehicle?

Appellant's Brief at 5-6 (cleaned up).

In his first argument, Appellant contends that the court erred in denying his motion to suppress on the ground that Trooper Solis lacked reasonable suspicion to stop Appellant's vehicle to investigate whether Appellant was driving under the influence of alcohol or a controlled substance.  Our standard of review when addressing challenges to an order denying suppression is

limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017). Our scope of review is limited to the record created during the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013).

This Court previously explained:

When a police officer initiates a traffic stop of a vehicle, the stop constitutes a "seizure" within the meaning of the Fourth Amendment and activates constitutional protections against unreasonable seizures and detentions. *Whren v. United States*, 517 U.S. 806, 809-[8]10 (1996). Generally, a traffic stop must be supported by sufficient facts to provide an officer with reasonable suspicion to believe that the vehicle or driver was in violation of a provision of the Vehicle Code. *See* 75 Pa.C.S.[A.] § 6308(b). However, a stop based on reasonable suspicion under [Section] 6308(b) must "serve an investigatory purpose relevant to the suspected violation." *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*); *Commonwealth v. Salter*, 121 A.3d 987, 992 (Pa. Super. 2015). Therefore, in circumstances where the violation is such that it requires no additional investigation, the officer must possess probable cause before initiating the traffic stop. *Feczko*, 10 A.3d at 1291.

*Commonwealth v. Ruffin*, 282 A.3d 796, 800 (Pa. Super. 2022).

In determining what level of legal justification is necessary to support a vehicle stop, this Court previously stated:

[W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code

- 7 -

has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

*Salter*, 121 A.3d at 993.

Generally, the erratic operation of a motor vehicle in a dangerous fashion provides reasonable suspicion for an investigatory traffic stop. *See, e.g.*, *Commonwealth v. Butler*, 856 A.2d 131, 134 (Pa. Super. 2004) (speeding and weaving in and out of traffic provided reasonable suspicion to execute traffic stop). Moreover, reasonable suspicion of DUI exists if a police officer observes a vehicle repeatedly weaving in its lane of travel and/or drifting over the fog line. *See Commonwealth v. Velez-Diaz*, 2023 WL 2883147, at *1, *7 (Pa. Super. 2023) (non-precedential decision) (upon observing appellant's vehicle "cross the marked traffic lines and repeatedly weave within its lane of travel," trooper had reasonable suspicion of DUI, justifying traffic stop); *Commonwealth v. Walls*, 206 A.3d 537, 542 (Pa. Super. 2019) (trooper had reasonable suspicion defendant was driving under the influence of alcohol or controlled substance; trooper testified that second

trooper warned him of an oncoming truck straddling the fog line, moments later trooper witnessed defendant's truck riding along right fog line, and after turning to follow truck, trooper witnessed truck drift within its lane, from fog line to double yellow center line, and back to fog line, all within 300 yards before police trooper activated his overhead lights).

In the present case, Trooper Solis observed Appellant's car weaving within its lane and straddling the lane dividers for an extended period of time. In addition, the vehicle was traveling at 90 miles per hour, 35 miles per hour over the speed limit, and its turn signal was on for an extended period of time. Under the decisions described above, the trial court thus properly determined that Trooper Solis had reasonable suspicion to stop Appellant's vehicle to investigate whether he was driving under the influence.[1]

Next, Appellant argues that Trooper Solis lacked probable cause to arrest him during the traffic stop. We disagree.

A warrantless arrest must be supported by probable cause. ***Commonwealth v. Evans***, 685, A.2d 535, 537 (Pa. 1996). Probable cause exists when the facts and circumstances available to an officer sufficiently

---

[1] Appellant does not contend in his brief that Trooper Solis lacked probable cause to stop his vehicle for speeding. Even if he had raised this argument, it would have failed, because the record establishes that Trooper Solis had probable cause to stop Appellant's vehicle for speeding because the trooper saw the vehicle traveling down the highway at 90 miles per hour. ***See Salter***, 121 A.3d at 993 (police officer may stop vehicle if he has probable cause to believe that vehicle is speeding).

form a reasonable belief that the person to be arrested has committed a crime. *Salter*, 121 A.3d at 996. "Probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent [persons] act." *Id.* at 995. It is not necessary for the defendant to fail standardized field sobriety testing to furnish probable cause to arrest him for DUI. *Id.* at 996. Conversely, poor performance on field sobriety testing may be sufficient for a finding of impairment. *Id.*

Probable cause is determined under a totality of the circumstances analysis. *Commonwealth v. Banks*, 658 A.2d 752, 752-53 (Pa. 1995); *see also Salter*, 121 A.3d at 994-98 (police officer had probable cause to arrest defendant for DUI, where officer noticed odor of intoxicating beverage emanating from defendant's vehicle, observed that defendant's eyes were glassy and bloodshot, defendant admitted that she had two glasses of wine, and defendant performed poorly on field sobriety tests).

Here, the totality of circumstances provided probable cause for Trooper Solis to arrest Appellant for DUI. Trooper Solis observed Appellant driving far above the speed limit, weaving in his lane of travel, straddling lane divider lines, and driving for an excessive distance with his turn signal on. All of this behavior was indicative of impairment. After stopping the vehicle, Trooper Solis observed that Appellant's eyes were bloodshot, and the trooper smelled cologne, which often is used to mask the scent of alcohol. Appellant then performed standardized field sobriety tests unsatisfactorily. N.T. 10/09/23,

at 21-22. During the walk and turn test, Appellant displayed three indicators of impairment: failure to maintain balance in the instructional phase, an incorrect number of steps, and raising his arms for balance. *Id.* at 21. Appellant claims the dash camera footage shows he took the correct number of steps. Even if this were true, the fact that he failed to maintain balance and raised his arms indicated impairment. Next, during the one legged stand test, Appellant displayed three out of the four possible indicators of impairment: he put his foot down, swayed to the right, and used his arms for balance. *Id.* at 22. Although Appellant posits several alternative explanations for his performance on the field sobriety tests (allergy medicine, fatigue, injury), it was reasonable for an officer in Trooper Solis's position to determine that Appellant was driving under the influence of alcohol.

Finally, Appellant argues that the evidence adduced during trial was insufficient to prove his guilt for DUI. We disagree.

In reviewing challenges to the sufficiency of the evidence, our standard is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime

beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019).

To prove DUI – General Impairment, the Commonwealth must prove beyond a reasonable doubt that the defendant drove or exercised physical control of a motor vehicle "after imbibing a sufficient amount of alcohol that the individual is rendered incapable of safely driving." 75 Pa.C.S.A. 3802(a)(1). To establish impairment, the evidence must show that "alcohol has substantially impaired the normal mental and physical faculties required to safely operate a vehicle." *Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa. Super. 2000). Evidence that shows the defendant failed field sobriety testing may serve as proof he was impaired beyond the ability to safely operate a vehicle. *Commonwealth v. Mobley*, 14 A.3d 887, 890 (Pa. Super. 2011). Evidence of refusal to submit to chemical testing is admissible to show consciousness of guilt. *Commonwealth v. Bell*, 211 A.3d 761, 776 (Pa. 2019).

*Mobley* held that the defendant's failure of four field sobriety tests, driving through a stop sign, and an odor of alcohol was sufficient to prove impairment beyond a reasonable doubt. *Id.* at 890. Similarly, the evidence in the present case demonstrates that Appellant drove his vehicle erratically, had bloodshot eyes, used cologne to mask the smell of alcohol, and failed two

field sobriety tests during the traffic stop (the walk and turn and one legged stand). Viewed in the light most favorable to the Commonwealth, this evidence demonstrates that Appellant was impaired beyond the ability to safely operate a vehicle. Moreover, the evidence that Appellant refused to submit to a blood test demonstrated his consciousness of guilt. *Bell*, 211 A.3d at 776. Therefore, Appellant's challenge to the sufficiency of the evidence fails.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 4/29/2026